[Albrittin v. Mayor and Aldermen of Huntsville.]

# Albrittin *v.* Mayor and Aldermen of Huntsville.

## *Action for Damages against Municipal Corporation.*

1. *Judicial notice of charter.*—The charter of a municipal corporation is a public statute, of which the courts will take judical notice.

2. *Municipal corporation; when action lies against, on account of injuries caused by defective streets or side-walks.*—To render a municipal corporation liable, in a civil action, for special injuries caused by defective streets or side-walks, it is not necessary that the duty of keeping its streets and side-walks in repair shall be expressly enjoined by its charter, or any other public statute : the duty and liability arise, when the charter confers express power to open, improve, repair, and keep the streets, &c., in safe condition for travel, and additional power to raise the necessary funds for that purpose, by taxation or assessments ; and an action lies in favor of a person who is injured by the neglect of this duty, when he did not bring the accident upon himself by his own culpable negligence, and the defect in the street or side-walk had existed, within observation by the people generally, for such length of time as must have enabled it to be known.

Appeal from the Circuit Court of Madison.

Tried before the Hon. Louis Wyeth.

This action was brought by James H. Albrittin, against the mayor and aldermen of the city of Huntsville ; and was commenced on the 19th November, 1877. The complaint was in these words :

"The plaintiff claims of the defendant, a municipal corporation under the laws of said State, twelve thousand dollars, as damages, because the defendant failed to do its duty, and erect and put up a barrier, railing, or guard, along the north side of Spring street, a public highway in said city, and south of, and opposite the 'Huntsville Hotel,' to prevent travellers and pedestrians from falling from the street or side-walk, over a precipice, or declivity, there being and situated, about the distance of eight feet, to the basement or foundation of said hotel ; whereby the plaintiff, who did not know of the existence of said precipice, in consequence of the said negligence of the defendant, on the night of the 15th of November, 1876, necessarily and unavoidably fell from said street, over said precipice or declivity, without fault of the plaintiff, and broke his leg, so that it had to be, and was, on the 16th of November, 1876, cut off above the knee.

2. "Plaintiff claims of defendant twelve thousand dollars damages, because it was, and is, the duty of the defendant to keep the streets of said city in repair, and to put up guards

or railings, and, at night, to keep lights burning, opposite and near to any precipice, or dangerous declivity, in and contiguous to the streets and side-walks of said city.  On the north side of, and contiguous to Spring street, which was, at the time of the grievances herein alleged, and now is, a public street and highway of said city, for all persons to pass and repass, go and return upon, there was, and has been for several years, and now is a dangerous precipice or declivity, opposite to which the defendant had, knowing the existence and situation of said precipice or declivity, wrongfully and negligently failed and refused to put any guard or railing, and near to which the defendant had failed to have any or sufficient lights to show and expose said precipice or declivity. The plaintiff, who did not know of the existence of said precipice, on the night of the 15th of November, 1876, while passing along said Spring street, on foot, in consequence of the said negligence of the defendant in failing to place guards or railings between said precipice or declivity and said street, unavoidably and necessarily fell from said street, to the bottom of said precipice, a distance of about six feet, and by such fall broke his leg, so that it had to be, and was, amputated above the knee on the following day ; and he, the said plaintiff, became and was sick, sore, lame, diseased, and disordered, and remained and continued for a long space of time, to-wit: from thence, hitherto, during all which time the said plaintiff thereby suffered and underwent great pain, and was prevented from attending to and transacting his necessary and lawful affairs and business, by him during that time to be performed and transacted : and was also, by means of the premises, forced and obliged to · pay, lay out and expend, and did pay, lay out and expend, a large sum, to-wit: the sum of two thousand dollars, in and about endeavoring to get healed and cured of the said wounds, sickness and disorder ; and was also, by means of the premises, forced and obliged to pay and expend, and did pay and expend a large sum, to-wit: two thousand dollars for board, lodging, and attention while so confined by said injuries ; and was also forced to expend, and did expend and pay out, a large sum of money, to-wit: two thousand dollars, in bringing a suit against said defendant for said injuries ; and was also forced to pay out and expend a large sum of money, to-wit: two thousand dollars, to have the business and work of the plaintiff done, which plaintiff was by the premises rendered unable to do ; and he, the plaintiff, was, also, put to great damage and loss, to-wit: the sum of twelve thousand dollars by reason of the premises.  Whereby the plaintiff, for all the time of his future life, was made less able to support and

[Albrittin v. Mayor and Aldermen of Huntsville.]

maintain and care for himself. Therefore plaintiff sues," &c.

3. "And the plaintiff claims of the defendant, a municipal corporation under the laws of Alabama, the further sum of twelve thousand dollars, because it was and is the duty of the defendant to keep the streets of said city in repair, and to remove, take away from, and prevent obstructions being upon the same, and to put up guards, barriers, and railing, and at night to keep lights opposite and near to any precipice or dangerous declivity in and contiguous to the streets and side-walks of said city, unknown to the plaintiff. On the side-walk, on the north side of Spring street in said city, which street and side-walk were at the time of the grievances herein alleged, and now is a public street, side-walk and highway of said city, for all persons to pass and repass, go and return upon, there was and has been for more than one year an obstruction or impediment, consisting of the end of a platform, which rests upon the side-walk and street, which blocks up, and makes said side-walk impassable, and prevents travellers from walking on said side-walk, and forces them to walk in said street, on north side of which, and ·contiguous to the same, there was and has been for one year, and now is a dangerous precipice, or declivity, opposite to which the defendant had, knowing the existence and situation thereof, and knowing the situation of said platform or impediment on said side-walk, wrongfully and negligently failed and refused to put any guard or railing, and near to which defendant failed to put any lights to show and expose said precipice and declivity ; and the said defendant, knowing the existence and situation of said platform, or impediment, refused to remove, and permitted the same to so remain, knowing that said platform, or impediment, would force travellers to walk near to and over said precipice. The plaintiff, on the night of the 15th of November, 1876, while lawfully passing and walking along said Spring street, in consequence of said negligence of the defendant, in failing to remove the end of said platform or impediment from said side-walk, could not walk thereon, and was forced to walk in said street ; and, in consequence of the said negligence of the defendant in failing to place guards, railings, or barriers, at and on the edge of said street, between said street and said precipice, or declivity, he, the said plaintiff, necessarily and unavoidably fell from said street, to the bottom of said precipice or declivity, a distance of about six feet, and by such fall broke his leg, so that it had to be, and was amputated above the knee, on the following day ; and he, the said plaintiff, became and was sick, sore, lame, diseased, and disordered, and remained and continued for a long space of time, to-wit : from thence hitherto,

during all which time the said plaintiff thereby suffered and underwent great pain, and was prevented from attending to and transacting his necessary and lawful affairs and business, by him during that time to be performed and transacted; and was also, by means of the premises, forced and obliged to pay, lay out, and expend, and did pay, lay out, and expend, a large sum, to-wit : the sum of two thousand dollars, in and about endeavoring to get healed and cured of the said wounds, sickness, and disorder; and was also, by means of the premises, forced and obliged to pay out and expend a large sum, to-wit: two thousand dollars for board, lodging and attention, while so confined by said injuries; and was also forced to expend, and did expend and pay out, a large sum of money, to-wit: two thousand dollars, in bringing suit against said defendants for said injuries; and was also forced to pay out and expend a large sum of money, to-wit: two thousand dollars, to have the business and work of the plaintiff done, which plaintiff was by the premises rendered unable to do; and he, the plaintiff, was also put to great damage and loss, to-wit: the sum of twelve thousand dollars, by reason of the premises, whereby the plaintiff for all the time of his future life was made less able to support and maintain and care for himself. Therefore plaintiff sues," &c.

The defendant demurred to the whole complaint, and to each count thereof separately, assigning several causes of demurrer. The court sustained the demurrer, deciding, as the judgment recites, " that the defendant is not liable, because there is no duty imposed on the defendant to keep the streets of said city in repair, or to put up guards or barriers, in cases, and under circumstances as alleged in the complaint." The judgment on the demurrer is now assigned as error.

WALKER & SHELBY, for appellant.—It was not necessary to set out the charter of the defendant corporation, since the court will take judicial notice of it.—*Smoot v. Mayor of Wetumpka*, 24 Ala. 112; *Perryman v. Greenville*, 51 Ala. 507. An inspection of the charter shows that the corporation is invested with very full and ample powers in the premises— the power "to declare, prevent, and remove nuisances;" "to erect and repair bridges;" "to construct drains and sewers, and keep them in repair;" "to keep in repair the streets, avenues, and alleys of said city;" "to discontinue and close them when expedient;" "to widen or change their direction, and to open new ones;" "to pave, gravel, macadamize, or otherwise improve any street, or part thereof;" and to provide the necessary funds for these several purposes, by tax-

ation, or assessments against persons or property. And, in addition to these powers, expressly conferred by its charter, the general statutes confer on all municipal corporations the power to "keep in repair all necessary streets, alleys, and drains, and to adopt regulations necessary for the same ;" and make it a misdemeanor, on the part of the officers of the corporation, to suffer the streets to be out of repair for more than ten days at one time.—Code of 1876, §§ 1782, 1667, 4248. From these various statutory provisions, special and general, the duty to keep the streets in repair arises by necessary implication, although the charter does not expressly declare, as in the case of *Smoot v. Mayor of Wetumpka*, 24 Ala. 112, "the streets and highways of said city shall be kept in repair by said city." Although the language of the charter may be, grammatically, only permissive, yet it is legally peremptory; for, "where power is given by statute to public officers by permissive language—as that they ' *may*, if deemed advisable,' do a certain thing—the language used must be regarded as peremptory, when the public interests, or individual rights, require that it should be."—*Supervisors v. United States*, 4 Wallace, 435. When the duty of keeping its streets and side-walks in safe condition is enjoined upon a municipal corporation by express words, or arises from a fair construction of its charter, there is a corresponding liability for a breach of that duty, by which any person suffers special damage ; and this now seems to be the general doctrine, as laid down in the text-books and adjudicated cases.—Dillon on Municipal Corporations, 754-6; Wharton on Negligence, §§ 950, 975-6 ; Shearman and Redfield on Negligence, § 391, and notes ; *Barnes v. District of Columbia*, 1 Otto, 551 ; *Nebraska v. Campbell*, 2 Black, U. S. 590 ; *Weightman v. Corporation*, &c. 1 Black, 39 ; *Robbins v. Chicago*, 4 Wallace, 658 ; *Mayor v. Sheffield*, 4 Wallace, 194 ; *Conrad v. Ithaca*, 16 N. Y. 158 ; *Storrs v. Utica*, 17 N. Y. 104 ; *Sparhawk v. Salem*, 1 Allen, 30 ; *Bill v. Norwich*, 39 Conn. 222 ; *Davenport v. Ruckman*, 37 N. Y. 568 ; *Requa v. Rochester*, 45 N. Y. 129 ; *Barton v. Syracuse*, 36 N. Y. 54; *Browning v. Springfield*, 17 Illinois, 143 ; *Claybury v. Chicago*, 25 Illinois, 535 ; *Springfield v. Le Claive*, 49 Illinois, 476 ; *Jones v. New Haven*, 34 Conn. 1 ; *Meares v. Washington*, 9 Ired. 73 ; *Anne Arundel County v. Duckett*, 20 Md. 468 ; *Pittsburg v. Grier*, 22 Penn. 54 ; *Erie City v. Schwingle*, 22 Penn. 388 ; *Cook v. Milwaukie*, 24 Wisc. 270 ; *Ward v. Jefferson*, 24 Wisc. 342; 17 Grattan, 241, 375 ; *Western College v. Cleveland*, 12 Ohio, 377 ; *McCombs v. Akron*, 15 Ohio, 476 ; *Rhodes v. Cleveland*, 10 Ohio, 159. The following English cases' sustain the same doctrine : *Mayor v. Henley*, 2 Cl. & F.

[Albrittin v. Mayor and Aldermen of Huntsville.]

331; *Mersey Docks v. Gibbs*, 1 House of Lords Cases, 93 ; *Scott v. Mayor*, 37 Eng. Law & Eq. 465; *Canal Co. v. Parnaby*, 11 Ad. & El. 223.

BRANDON & JONES, with whom was N. DAVIS, *contra.*—1. In the United States, there is no common-law obligation resting on corporations, to repair highways, streets, or bridges, and they are not obliged to do so, except by force of some statute.—*Williams v. Mayor*, 1 Denio, 595, 600 ; *Cole v. Medina*, 27 Barbour, 218 ; *Peck v. Batavia*, 32 Barbour, 634, 643 ; *Carr v. Northern Liberties*, 35 Penn. 324-30 ; *Smoot v. Mayor of Wetumpka*, 24 Ala. 112 ; Shear. & Redf. on Negligence, §§ 124-28, 346.

2. This doctrine applies to counties also ; as to which, it has been repeatedly held, that they are not liable to a private action, at the suit of individuals who receive injuries, on account of neglect to keep the roads in repair.—*Barbour County v. Browder*, 36 Ala. 366 ; *Covington County v. Kinney*, 48 Ala. 566 ; *Sims v. Butler County*, 49 Ala. 110 ; *Dargan v. Mayor and Aldermen of Mobile*, 31 Ala. 469; *City Council v. Gilmer*, 33 Ala. 116 ; *Fowle v. Alexandria*, 8 Curtis, 460 ; *Riddle v. Proprietors, &c.*, 7 Mass. 169-86 ; *Marr v. Leicester*, 9 Mass. 237 ; *Sussex v. Straddler*, 3 Harr. 108 ; *Detroit v. Blakeley*, 21 Mich. 184, 112 ; 2 Kent, 274; Dillon on Municipal Corporations, 786.  As to duties imposed on them, counties stand on the same footing as municipal corporations proper.—24 Ala. 112.

3. Even when the legislature enjoins this duty on corporations, the decisions treat it as a public, and not a corporate duty ; and they are not liable to be sued civilly for damages, caused by their neglect to perform this duty, unless the action is expressly given by the statute.—Dillon on Mun. Corp. §§ 747, 717 ; *Marr v. Leicester*, 9 Mass. 247 ; 25 Ala. 461.

4. In the New England States, the liability is not implied, but statutory.—Dillon, M. C. §§ 747-8 ; 7 Mass. 9 ; 9 Mass. 248 ; 3 Cush. 121 ; 6 Cush. 141 ; 8 Cush. 554 ; 7 Gray, 421 ; 13 Gray, 59 ; 102 Mass. 489 ; 17 Conn. 475 ; 22 Maine, 114 ; 20 Maine, 246 ; 32 Maine, 536; 36 Maine, 393, 521 ; 2 N. H. 392 ; 36 N. H. 284; 27 Vermont, 443.  These statutes impose on towns the duty to make their ways safe and convenient, and give an action for injuries caused, to person or property, by any defect or want of repair.

5. A municipal corporation is not liable to a private action for negligence in the performance of its duties, unless the duties imposed are imperative.—*Smoot v. Mayor of Wetumpka*, 24 Ala. 112 ; *Cole v. Verbena*, 27 Barbour, 218 ; *Peck*

*v. Batavia*, 32 Barbour, 634; *Carr v. Northern Liberties*, 35 Penn. 324.

6. There is a marked difference between the New England statutes, the Alabama statute, and the charter of Huntsville. In New England, the statutes impose the duty on towns. In Alabama, the county commissioners are vested with a discretion in the premises. The charter of Huntsville does not impose any duty on the city, except to collect a street tax, and confers on the authorities power to allow parties, who are amenable to such a tax, to discharge it by working on the streets, and to require that taxes, collected in new portions of the city, be appropriated to the benefit of those portions; and these duties are not imposed in imperative terms, but only in terms which confer a discretion.—Charter of Huntsville, §§ 22, 23; Code of City Laws, §§ 67, 91, 143-48.

MANNING, J.—This suit was brought by appellant, for damages for the wounds, suffering, loss of time, and expense, to which he was subjected, by a fall of about six feet in the night time, while walking in one of the public streets of Huntsville, down a precipice, or walled place, the upper part of which was on a level with the street, or foot pavement on the side thereof, and without a railing or other barrier, or any light burning near it. to prevent persons who, like him, did not know of its existence, or should not see it, from being precipitated down the descent. By the fall, it is alleged, appellant's leg was broken, and had to be afterwards amputated; from which, and the bruises he received, resulted great pain, sickness, long confinement, and expense, and also the inability and injury of being a cripple for life. It is alleged that it was defendant's duty to have had such railing, barriers, or other safeguards, erected along said precipice, to prevent accidents thereby; that it had existed in the dangerous condition it was then in, for a year or more before appellant's fall; and that, notwithstanding its knowledge of such a condition, defendant negligently failed and omitted to perform said duty, or otherwise to cause the dangerous nuisance to be abated. This is the substance of the complaint.

The charter of a municipal corporation is a public act, of which the courts take judicial notice, without any recital of its provisions in the pleadings.—*Smoot v. Wetumpka*, 24 Ala. 121; *Case v. Mayor of Mobile*, 30 Ala. 538; *Perryman v. Greenville*, 51 Ala. 510.

In March, 1870, a statute was passed, entitled "An act to establish a new charter for the city of Huntsville." The name given to the corporation is, "The Mayor and Aldermen

[Albrittin v. Mayor and Aldermen of Huntsville.]

of the City of Huntsville." According to section 2, "the corporate limits . . . embrace an area of land two miles square, whose centre shall be the centre of the public square in said city," &c. Section 4 provides, "that the government of said corporation shall consist of, and its corporate power shall be exercised by, a mayor and eight aldermen, who shall be elected," &c.; and section 17 enacts (among many other important provisions), that they "shall have power and authority to declare, prevent, and remove nuisances; . . . to erect and repair bridges; to construct drains and sewers, and keep them in repair; . . to keep in repair the streets, avenues, and alleys of said city; to discontinue and close them, when expedient; to widen or change their direction, and open new ones; . . . to pave, grade, macadamize, or otherwise improve any street, or part thereof; to provide the means therefor, if deemed expedient and proper, by assessments on the owners of property to be benefitted thereby, or by assessment on the property to be benefitted, and to collect and enforce such assessments as other taxes; . . . to provide for the punishment, by fine, or fine and imprisonment, or by imprisonment, or by work on the streets, or other work of the city, of any breach of the laws, by-laws, ordinances of the corporation; . . . and to pass all such laws, by-laws, and ordinances, as may be necessary or proper to execute the powers in this charter granted, as may be expedient for good government of the city."—Acts 1869-70, 412.

These, and many other provisions in the charter, show that Huntsville was a city of consequence, and that it was endowed, as such, with ample powers and faculties, and an organization for the exercise of them, by which it was designed to make this city, in a very large degree, independent, in its internal administration, of State and county officials. Was it so charged by this legislation with the duty of keeping the streets in order, as to be liable to appellant for the consequences of the accident to him? The circuit judge was of the opinion, that it was not. He sustained the demurrer to the complaint—not on the ground that its averments were defective, but, as the judgment-entry recites, "because there is no duty imposed upon the defendant, to keep the streets of said city in repair, or to put up guards or barriers, in cases, and under circumstances, as alleged in the complaint." We shall not, therefore, scrutinize the counts in the complaint, to see whether or not they could be made better by amendment. The declaration in *Smoot v. Wetumpka*, 24 Ala. 116, might be advantageously consulted, in the preparation of such a complaint.

Probably, it was under the influence of the case just referred to, that the circuit judge reached the conclusion, that the city was not liable in the present cause. The particular duty of keeping the streets in repair was enjoined on the municipal authorities of Wetumpka, in express terms; ample authority to raise the means of doing so was conferred upon them, while the inhabitants of the town were, at the same time, expressly exempted from working on the public roads of the county. Some stress was laid by the court on these facts; and the case did not require more to be said than the court did say, to-wit: "Where a particular duty is positively enjoined, and no discretion is vested in the corporation, as to whether it will or will not perform it, . . . and, having the means for performing this duty, the corporation willfully or negligently fails to perform it, in consequence of which failure an extraordinary injury happens to an individual, we see no reason why an action will not lie as well against it, as against an individual, for a similar omission of duty that works an injury to another."—24 Ala. 121.

But the court did not say that it was only in such a case that a municipal corporation would be liable to one so injured. The subject has been studied, and the judicial decisions in respect to it examined, and the results expressed in carefully considered language, by Judge DILLON, in his excellent work on Municipal Corporations. After showing that the same law is not applicable to counties and their subdivisions, called in New England "towns," and like *quasi-corporations*, he says (§ 789): "It may be fairly deduced from the many cases on this subject referred to in the notes, that, in the absence of an express statute, imposing the duty, and declaring the liability, *municipal corporations proper*, having the powers ordinarily conferred upon them, respecting bridges, streets, and side-walks, within their limits, owe to the public the duty to keep them in a safe condition for use in the usual mode by travellers, and are liable in a civil action for special injuries resulting from neglect to perform this duty. Such a duty and liability are considered to exist, without a positive statute, when the following conditions concur: 1. The place in question, whether bridge, side-walk, or street, must be one *which it is the duty of the corporation to repair, or keep in a safe condition;* and this *duty* (to keep in repair), if not specifically enjoined, must arise upon a just construction of the charter or statutes applicable to the corporation. 2. This duty or burden must appear, upon a fair view of the charter, or statutes, to be imposed or rest upon the *municipal corporation as such*, and not upon it as an agency of the State, or upon its officers as independent pub-

lic officers. (This, however, in general, appears sufficiently, when the municipality sought to be made liable exists under a special charter, or general act, which confers upon it peculiar powers and privileges as respects streets, their control and improvement, not possessed throughout the State at large under the general enactments concerning ways.) 3. The *power to perform the duty* of maintaining the streets in a safe condition, by authority to levy taxes, or impose local assessments for the purpose, must be (as it almost always is) conferred upon the corporation. . . . Where the duty to repair is not specifically enjoined, and an action for damages caused by defective streets is not expressly given, still both the duty and liability, if there be nothing in the charter or legislation to negative the inference, has often, and, in our judgment, properly, been deduced from special powers conferred upon the corporation, to open, grade, improve, and *exclusively control* public streets within their limits, and from the means which, by taxation and local assessments, or both, the law places at its disposal, to enable it to discharge this duty."

These long extracts are made because of the evident pains taken by the learned author, to state the doctrine, which is the result of the decisions on the subject, in its exact extent, and with its just qualifications, in words selected with a judicial care for accuracy.

In the case of *Robbins v. Chicago* (2 Black, 422), in the Supreme Court of the United States, it is said : "It is well settled, that a municipal corporation, having the exclusive care and control of the streets, is obliged to see that they are kept safe for the passage of persons and property, and to abate all nuisances that may be dangerous; and if this plain duty is neglected, and any one is injured, it is liable for the damages sustained. The corporation has, however, a remedy over against the party that is in fault, and has so used the streets as to produce the injury, unless it was also a wrong-doer." This was a case, in which, also, a person was injured by a fall that might have been prevented, if railings had been put up by the property-holder who had caused the excavation to be made.

It is quite plain, upon examining the provisions of the charter of Huntsville, in the light of the law as above set forth, that the city is liable for all the damages sustained by appellant, if the precipice referred to had existed in its unguarded and dangerous condition, within observation by the people generally, for such length of time as must have enabled it to be known, and appellant did not bring the disaster

upon himself, by his own culpable negligence in not avoiding an obvious peril.

The circuit judge erred in his ruling sustaining the demurrer; and the judgment must be reversed, and the cause remanded.