JOHN Q. ROBINSON, Respondent, v. KANSAS CITY, MISSOURI, and THE PARKER-WASH-INGTON COMPANY, Appellants.

**Kansas City Court of Appeals, April 6, 1914.**

1. **NEGLIGENCE: Municipal Corporations: Embankments.** The plaintiff sued the defendants to recover for personal injuries sustained by his wife, caused by the negligence of the defendants in failing to guard an embankment and excavation in a public street which had been recently graded. The plaintiff's wife going home from a grocery store, in the dark, fell down the embankment, which was in its natural state, and was injured. *Held*, that a city is under no duty to travelers to fence off or otherwise guard portions of streets left in a state of nature.

2. ——: ——: ——. A city lawfully exercised its governmental discretion to grade and prepare for use only the wagon roadway in part of the street. It is not required to grade and improve the whole space and build sidewalks on it, and therefore is not liable for not having done so.

Appeal from the Jackson Circuit Court.—*Hon. W. O. Thomas*, Judge.

REVERSED.

*A. F. Evans, Jas. W. Garner, Hunt C. Moore* and *Ball & Ryland* for appellants.

*Botsford, Deatherage & Creason* for respondent.

JOHNSON, J.—Plaintiff sued to recover damages he sustained in consequence of personal injuries to his wife which he alleges were caused by negligence of defendants in failing to guard an embankment and excavation in one of the public streets of Kansas City which had been recently graded by the defendant The Parker-Washington Company under contract with the defendant city. Separate answers were filed, each con-

taining a general denial and a plea of contributory negligence. At the close of plaintiff's evidence the court sustained demurrers to the evidence offered by the respective defendants whereupon plaintiff took an involuntary nonsuit and afterward the court sustained his motion to set it aside and ordered a new trial. Both defendants appealed.

The injury occurred about eight o'clock p. m., November 3, 1906, at the intersection of Brighton avenue and Twenty-third street, a locality in a remote residence district of the city. Brighton avenue runs north and south, Twenty-third street, east and west, the platted width of the latter street being sixty feet. There were numerous residences in the vicinity, but neither street had been graded until several months before the date of the injury when the city had caused Brighton avenue to be graded to the established grade from Twenty-third street south. The established grade at the intersection was six feet below the natural surface, and the contractor had extended the grading far enough into the intersection to enable him to cut a narrow approach in Twenty-third street to the crossing. Shortly after this work was done, the city let the contract to The Parker-Washington Company to grade Brighton avenue north from Twenty-third to Twentieth street to the established grade. The contract contained the provision: "Approaches to all intersecting streets and alleys shall be graded under this contract whenever and in whatever manner indicated by the engineer, and they shall be measured and estimated as a part of and in the same manner as the roadway grading." This contract had been nearly, if not entirely, performed by the contractor on the date in question and under the direction of the engineer the cut for the approaches on Twenty-third street had been widened to about twenty feet and was in the middle of that street. South of this cut the ground was not graded and from the southeast corner of the intersec-

tion of the east cut with Brighton avenue (which had been graded to its full width) a strip of ground fifteen to twenty feet wide had been left in Twenty-third street. This strip, which was on a level with the adjoining property, ended at Brighton avenue in an abrupt bank six feet high and was bounded on the north by a bank facing the cut in Twenty-third street. There was a building occupied by a grocer at the southeast corner of the platted intersection. It fronted on Brighton avenue and had been built on a surface grade. The grading of the avenue left its first floor six feet higher than the street and between the north wall and the cut in Twenty-third street was the strip of untouched ground we have described, which, of course, was within the bounds of that street as platted and dedicated. The entrance to the store was at the northwest corner which had been recessed so that the door faced northwest and was at the base line of a small triangular platform within the lines of the recess. The west and north walls of the building were on property lines and no steps or means of ingress and egress were provided by the grocer for the use of his patrons and other invitees. The grading of the streets had compelled those who sought the store to walk up the embankment facing Brighton avenue and a sinuous path about two feet wide led from near the sidewalk on Brighton to the triangular platform. Owing to erosions of the bank the end of the path was in Twenty-third street, a foot or two east of the avenue and on a line, perhaps five or six feet north of the corner of the entrance platform.

Plaintiff and his wife living a block north on Twenty-second street first visited a drug store at the corner of Twenty-fourth street and Brighton avenue, and then proceeded to the grocery store where they made some purchases. In leaving the store plaintiff came first, carrying a number of bundles, and proceeded down the path, followed by his wife who was some dis-

tance behind. The night was dark and the electric lamp at the corner was not burning. Mrs. Robinson left the path and fell down the bank near the intersection of the cut on Twenty-third street with Brighton avenue.

We have stated only such facts as are necessary to the view we have of the case and have not attempted to be accurate in such details as distances and measurements. For example, we have said that the strip of ground in the street on the south side of the cut in Twenty-third street was fifteen or twenty feet wide, since the cut was in the middle of a platted street sixty feet wide and itself was twenty or twenty-five feet wide. But in our view of the case it is immaterial whether this strip was twenty or only six feet wide, or whether the path to the store began in Brighton avenue or Twenty-third street. The controlling and all-important fact of the case is that Mrs. Robinson was injured, not while using a part of a public street the city had invited her to use, but while on a part the city had left in a state of nature and, therefore, had not thrown open to the use of the public. A city's duty towards persons using its public streets springs from invitation, express or implied, and unless the city does something from which such invitation reasonably may be implied, it cannot be said to have assumed any duty towards the public with respect to merely platted or dedicated streets. The city had a right to prepare a way only twenty feet wide in the middle of a dedicated street of sixty feet, without assuming any duty or liability with respect to the portions of the street left in a state of nature. [Curran v. St. Joseph, 143 Mo. App. 618; Conner v. Nevada, 188 Mo. 148; Downend v. Kansas City, 71 Mo. App. 529; Ely v. St. Louis, 181 Mo. 723.] In the last case cited it is said: "The city lawfully exercised its governmental discretion to grade and prepare for use only the wagon roadway in part of the street; it was not required to grade and improve the

whole eighty-foot space and build sidewalks on it, and therefore is not liable for not having done so. The path through the weeds and over the uneven surface spoke for itself and told everyone that there was no sidewalk there and it invited no one to use it at the city's expense. The city was not responsible for the condition of that path and therefore it will not be necessary to decide whether by the plaintiff's own evidence he was negligent in travelling the path under the circumstances."

So in the present instance the bank spoke for itself and told plaintiff and his wife that it was a part of the street the city did not invite them to use and which, so far as the city and its contractor were concerned, they would go upon at their own risk of injury. A city is under no duty to travelers to fence off or otherwise guard portions of streets thus left in a state of nature.

The demurrers to the evidence were properly sustained and the court erred in granting a new trial.

Reversed. All concur.