# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## CITY OF NORFOLK V. JULIA E. TRAVIS.

### December 22, 1927.

1. STREETS AND HIGHWAYS—*Duty of Authorities—Safety of Entire Length and Width of Street or Highway.*—Public ways for their entire length and width should be reasonably safe for uses consistent with the reason for their establishment and existence.

2. STREETS AND HIGHWAYS—*Duty of Municipality—Safety of Entire Length and Width of Street—Governmental Discretion as to Width, Extent or Paving.*—The rule of law that public ways for their entire length and width should be reasonably safe does not take from the municipalities the right and discretion to lay out, widen, narrow, close or extend, grade, pave and otherwise improve streets. The power given by the State to municipalities imposes upon them duties for the failure to perform which they are liable, but this liability does not attach to the exercise of governmental discretion such as the width, extent or paving, etc., of streets.

3. STREETS AND HIGHWAYS—*Duty of City—Street Merely Dedicated or Platted—Sidewalks.*—No obligation towards the public is imposed upon a city with respect to merely platted or dedicated streets or public ways on paper unless the city does something or omits to do something, from which an invitation, expressed or implied, may be reasonably inferred or implied. The city has a right, therefore, to prepare a way of a width which in its discretion will accommodate the public in the middle of a dedicated or platted street, without assuming any duty or liability with respect to the portion of the street allowed to remain in a state of nature, and the same principle of law applies to sidewalks and footways.

4. STREETS AND HIGHWAYS—*Safety—Duty of Municipality—Ways Intended for General Use.*—The municipality must exercise reasonable care to keep in a safe condition for passage such public ways as are opened and intended by the municipality for general use, and over which the municipality exercised or may exercise full control, for their entire width. The invitation on the part of the municipality to use such ways imposes the obligation.

5. STREETS AND HIGHWAYS—*Obstructions—Rule as between Public Authorities and Traveler and Rule as between Traveler and Others.*—As be-

tween a town, county or public authorities having supervision of public highways and a traveler, the latter will leave the portion of the road laid out and prepared for customary use and travel, and go upon and use the unprepared and customarily unused part at his own risk; but the traveler is nevertheless entitled to the unobstructed and uninterrupted use of the entire width of the highway as against the unlawful acts of other persons, either real or artificial.

6. STREETS AND HIGHWAYS—*Counties—Liability of County.*—In Virginia counties as governmental agencies are not liable for personal injuries caused by defects in the public roads.

7. STREETS AND HIGHWAYS—*Use of Entire Street—Grass Plots and Tree Plots.*—Where adequate provision for travel by pedestrians and by vehicles has been made for travelers by a municipality, and between those ways, the remaining surface is left for grass or tree plots, these plots may be protected and guarded against unnecessary use by travelers, by appropriate or suitable guards set on or within the side of such plots. These guards should reasonably conform to the purpose intended, and be placed with a due regard to the safety of travelers on the walk ways and on the street between the curbs.

8. STREETS AND HIGHWAYS—*Use of Entire Street—Grass Plots and Tree Plots.*—A traveler has not the right to assume that grass plots and tree plots outside the sidewalks are reasonably safe for travel, and if he leaves the sidewalk and goes thereon he may be guilty of contributory negligence that bars his recovery.

9. STREETS AND HIGHWAYS—*Grass Plots and Tree Plots—Liability of City—Case at Bar.*—In the instant case it appeared that a city opened an avenue, leaving four feet and a half of the platted street between the sidewalk and the abutting property owners unaccepted or unappropriated as part of the yards of the abutting property. The city assumed no obligation toward the public with respect to that four feet six inches, which appeared to users of the street to be part of the abutting lots, and was notice to the public that it was no part of the street.

   *Held:* That the city could allow without liability the owners of the adjoining lots to make use of the grass plot in the same manner as if they had owned in fee to the edge of the sidewalk.

10. STREETS AND HIGHWAYS—*Judicial Notice—Erection of Fences by Abutting Owners—Liability of City.*—It is a matter of common knowledge that the owners of lots abutting public sidewalks erect and maintain fences and copings along the same, and that no obligation is imposed upon the cities thereby to remove or inspect same unless such structures are openly dangerous.

11. STREETS AND HIGHWAYS—*Injuries to Pedestrians—Proximate Cause—Pedestrian Stumbling Upon Fallen Rail of Fence Erected by Abutting*

*Owner—Case at Bar.*—The instant case was an action by a pedestrian for injuries sustained when she tripped and fell over a pipe on a sidewalk. This pipe had constituted the top rail of a fence erected by an abutting owner in front of his property immediately adjoining the paved sidewalk. From the sidewalk to the property line four feet five inches of the paper street was in grass and allowed to be used as part of the abutting lots. Even if it were conceded that the city should not have permitted the fence, which was within the paper portion of the street, the city was not liable, because as an obstruction of the public way it was not the proximate cause of plaintiff's injury as she did not walk into the fence, but stumbled on the top rail which had fallen on the sidewalk, and there was no evidence that the city had notice, either actual or constructive, that the rail had fallen on the sidewalk or that on two previous occasions the rail had fallen down.

12. Streets and Highways—*Action by Pedestrian—Fence Erected by Abutting Owner—Notice—Case at Bar.*—The instant case was an action against a city by a pedestrian for injuries sustained when she fell on a sidewalk of the city. The defect complained of by plaintiff was the falling of a pipe from an adjacent fence across the sidewalk; how or when the pipe got on the sidewalk or how long it had been suffered to remain there, the evidence did not disclose. To meet this lack of proof, plaintiff claimed that the city was negligent in allowing the fence in its condition where it was, because it was potentially dangerous.

    *Held:* That there was no merit in this contention of plaintiff.

13. Negligence—*Potential Danger—Presumption of Negligence—Res Ipsa Loquitur—Municipal Corporations.*—Cities may be held liable for structures erected by others, such as bill-boards by the side of a street and falling on pedestrians, but there is no liability in the absence of notice to the city that the structure was dangerous and not potentially dangerous. The doctrine of *res ipsa loquitur* is not applicable to municipal corporations.

14. Streets and Highways—*Liability of City—Pedestrian Injured in Stumbling over Rail of Fence on Sidewalk—Notice.—Case at Bar.*—The instant case was an action by a pedestrian against a city for injuries sustained when she stumbled over the top rail of a fence which had fallen on the sidewalk. The city was not liable for permitting the fence to be erected near the sidewalk in that part of the street left in a state of nature. There was no evidence of notice, actual or constructive, to the city that the fence was dangerous, or proof that the pipe had remained across the sidewalk such length of time as to amount to constructive notice that the sidewalk was unsafe.

    *Held:* That there was no proof of negligence upon which the jury could base a verdict for plaintiff.

Error to a judgment of the Circuit Court of the city of Norfolk, in a proceeding by motion for a judgment for damages. Judgment for plaintiff. Named defendant assigns error.

*Reversed.*

The opinion states the case.

*R. W. Peatross* and *George Read Martin*, for the plaintiff in error.

*L. S. Parsons* and *Harvey E. White*, for the defendant in error.

Christian, J., delivered the opinion of the court.

Redgate avenue is a public street of the city of Norfolk. There is a thirty-two foot roadway paved in the center, and fourteen feet on either side for sidewalks. On the south side of said roadway, immediately adjoining the curb, there is a narrow grass plot, then a paved sidewalk with a curb on the south side made of bricks—set diagonally in the ground and projecting above the sidewalk three or four inches. From this sidewalk to the property line—four feet five inches of the street was in grass, and allowed to be used as part of the abutting lots along that side of the street.

The defendant, George W. Price, owns the property fronting on the south side of Redgate avenue known as No. 509 Redgate avenue. Price constructed around his front lawn—which included the four feet five inches of the paper street—immediately adjoining the paved sidewalk—an iron pipe fence, eighteen to twenty inches high, composed of one and one-quarter gas pipes for corner posts driven into the ground and connected at the top by the same kind of pipe. This fence had

been erected about eighteen months prior to the accident. About three months after its erection, some boys broke the top pipe out of the T· which Price repaired with a hickory stick driven into the pipe and bound with wire. One month before this accident it was broken down again and one end of the pipe had fallen upon the sidewalk, but was placed back in the yard.

One of the pipes composing the top rail of this fence became detached from the posts, and in some manner fell into the paved portion of the sidewalk on the night of October 26, 1925. Julia E. Travis, who lived in the block where 509 Redgate avenue is situated—and had lived in that immediate neighborhood for about· two years—while walking on said sidewalk, stepped upon this pipe, and in trying to catch herself, fell over this pipe and upon the brick coping, and sustained the injuries complained of in this suit. On the trial the jury brought in a verdict for $1,500.00 against both defendants, George W. Price and the city of Norfolk, and the court entered judgment thereon, to which judgment the defendant city duly excepted.

"The error assigned by the defendant city is, that the court erred in overruling the motion of said defendant to set aside the verdict against it, on the ground that it was contrary to the law and the evidence and without evidence to support it, and to enter final judgment in favor of it, the said city of Norfolk, in that there was no evidence of actual notice to the city of the defects alleged in the notice of motion, and the alleged defective condition of said city street had not existed for a sufficiently reasonable length of time for the city to have had constructive notice of the same and to have remedied the said alleged defects.

"The position of the defendant in error is that the city is liable upon two grounds:

"First, that it allowed that portion of the street set aside for pedestrians to be invaded by the structure erected by Price, which structure had been maintained in the street for at least eighteen months and had been in a defective condition for a month, and was always potentially dangerous."

[1-4] The above contention is based upon the general rule that the public ways for their entire length and width should be reasonably safe for uses consistent with the reason for their establishment and existence. But this rule of law does not take from the municipalities the right and discretion to lay out, widen, narrow, close or extend, grade, pave and otherwise improve streets. The power given by the State to municipalities imposes upon them duties for the failure to perform which said municipalities are liable, but this liability does not attach to the exercise of governmental discretion such as the width, extent or paving, etc., of streets. No obligation towards the public is imposed upon a city with respect to merely platted or dedicated streets or public ways on paper unless the city does something or omits to do something, from which an invitation, expressed or implied, may be reasonably inferred or implied. The city has a right, therefore, to prepare a way of a width which in its discretion will accommodate the public in the middle of a dedicated or platted street, without assuming any duty or liability with respect to the portion of the street allowed to remain in a state of nature. *Robinson* v. *Kansas City*, 179 Mo. App. 211, 214, 166 S. W. 343; *Ely* v. *St. Louis*, 181 Mo. 723, 730, 731, 81 S. W. 168; *Brennan* v. *Streator*, 256 Ill. 468, 100 N. E. 266.

The above principle of law applies also to sidewalks and footways. The municipality must exercise reason-

able care to keep in a safe condition for passage such public ways as are opened and intended by the municipality for general use, and over which the municipality exercises or may exercise full control, for their entire width. The invitation on the part of the municipality to use such ways imposes the obligation. McQuillen on Municipal Corporations, volume 8, section ·2743.

[5] The principle of law under discussion has not been passed upon directly in Virginia, but in the case of the *Appalachian Power Company* v. *Wilson*, 142 Va. ·468, 129 S. E. 277, it was necessary to the conclusion reached to approve or disapprove it. In that case the Appalachian Power Company placed a pole in the county road outside of the paved portion thereof. The question presented to the court was whether it was the duty of the municipality to keep the road outside of the paved portion reasonably safe for travelers who should travel thereon. The Supreme Court quoted with approval the rule that "as between the town or county, or public authorities having supervision of public highways and the travelers, the latter will leave the portion of the road laid out and prepared for customary use and travel, and go upon and use the unprepared and customarily unused part at his own risk, he is nevertheless entitled to the unobstructed and uninterrupted use of the entire width of the highway as against the unlawful acts of other persons, either real or artificial." *Williams* v. *San Francisco & N. W. R. Co.*, 6 Cal. App. 715, 93 Pac. 122; *Dickey* v. *Maine Telephone Company*, 46 Me. 485.

[6] The approval of the rule of non-liability of the county to travelers for obstructions in the unused portions of the public highways was not intended to effect the law in Virginia that counties as governmental

agencies are not liable for personal injuries caused by defects in the public roads.

The common practice of cities and towns in residence sections, to pave only portions of their streets, has been approved by the courts upon reason and justice and the following appears to be the general rule of law upon that subject: "The general rule is that the public ways for their entire length and width should be reasonably safe for uses consistent with the reason for their establishment and existence. But this general rule is subject to the necessary qualifications that municipal authorities may, in the exercise of a sound and reasonable judgment, fairly and with due regard to the public needs and welfare, apportion the surface of public streets to the uses of vehicles, to the uses of pedestrians, and to ornamentation and beneficial uses resulting from parkways." *Birmingham* v. *Carle*, 191 Ala. 539, 68 So. 22, L. R. A. 1915F, 797; 8 McQuillen on Municipal Corporations, section 2742.

The case of *Woodson* v. *Metropolitan Street R. Co.*, 224 Mo. 685, 123 S. W. 820, 30 L. R. A. (N. S.) 931, 20 Ann. Cas. 1039, and *Augusta* v. *Tharpe*, 113 Ga. 152, 38 S. E. 389 (cited by the defendant in error, were also cited by the appellee in *Birmingham* v. *Carle, supra*) held in effect that the sidewalk in a street included a parkway or tree plot. It may be conceded that the consequences flowing from the premises made by these decisions are opposed to the conclusions reached in *Birmingham* v. *Carle*. Examination of these cases, however, will show that the courts did not have in mind the principle of law under discussion herein, viz., that a municipality was not under obligation to keep its parkways in same condition for use as its sidewalks or that the pedestrian might assume that an appointed parkway is free from defect or obstruction in the same

way. If it was intended inferentially in these cases that the same rule of law applied to sidewalks and parkways or parts of the street left in a state of nature, the conclusion is contrary to the general line of authority on this subject, and not in accord with sound principles.

[7, 8] In the *Woodson Case* the railway had left steel rails piled in the parkway which caused the injury and no doubt the court had in view the rule of law, that the city must keep its public ways free from dangerous openings and obstructions close to the same. However, recovery was denied on account of decedent's contributory negligence in leaving the sidewalk and going upon the parkway. Where there has been adequate provision for travel by pedestrians and by vehicles, and between those ways, the remaining surface for grass or tree plots, these plots may be protected and guarded against unnecessary use by travelers, by appropriate or suitable guards set on or within the side of such plots. These guards should reasonably conform to the purpose intended, and be placed with a due regard to the safety of travelers on the walk ways and on the street between the curbs. It will be observed that while the exercise of the same degree of care is not required of municipalities over park ways as sidewalks, nevertheless they are obligated by law—for obvious reasons—not to allow dangerous obstructions or openings therein. Furthermore the traveler has not the right to assume that the spaces outside the sidewalk are reasonably safe for travel, and if he leaves the sidewalk and goes thereon he may be guilty of contributory negligence that bars his recovery.

In *Augusta* v. *Tharpe, supra,* a boy playfully started to run across the street between crossings, and ran into a piece of barbed wire stretched between two

telephone poles about twenty feet apart and standing within the curb of the street, and was thereby injured. The city contended that the boy could not recover because he undertook to cross the street between the crossings, but the court held that pedestrians had the right to cross the street between crossings unless forbidden to do so by ordinance and the city of Augusta had no such ordinance.

In *Townley* v. *Huntington*, 68 W. Va. 574, 70 S. E. 368, 34 L. R. A. (N. S.) 120, a child at play fell into a trench that had been cut across the parkway from the curb to the sidewalk, and left unguarded for four or five months, and was injured. The court held the parkway was part of the street—within the traveled bounds thereof—and a duty devolved on the city to protect pedestrians and other travelers from injury by defects, so situated within the traveled way that persons and animals could blindly *wander into it at night time* and irresponsible children at play fall therein.

The facts in the cases of *Richmond* v. *Pemberton*, 108 Va. 220, 61 S. E. 787, and *Richmond* v. *Gentry*, 111 Va. 160, 68 S. E. 274, were that the obstructions were in the paved sidewalks—the traveled paths—that the city had invited pedestrians to use. In the *Pemberton Case*, the contention of the city was that it was not under obligation to keep in a reasonably safe condition the entire width of the sidewalk, if the greater part and that most generally used was in such condition. The court answered this contention by the statement of the uniformly approved rule of law as follows: "It is the duty of a municipal corporation to keep *its sidewalks* in a reasonably safe condition for pedestrians throughout their entire width." This language indirectly recognizes the exception to that rule, where the municipality has constructed sidewalks only in part of the public way, which pedestrians are invited to use.

It is practically impossible to harmonize the cases on the subject of liability of municipalities to travelers upon their streets where there were parkways therein, because the facts vary and the courts sometimes apply different rules to determine liability.  But upon reason and justice the courts are agreed that municipalities assume no obligation toward the public with respect to merely platted or dedicated streets or public ways on paper unless the city expressly or impliedly does something or omits to do something from which an invitation to use same may be reasonably inferred or implied, and cities in the exercise of governmental discretion may lay out part of the platted street for public use and leave the remaining exterior limits unused and in a state of nature without obligation to the public in reference to that portion.

[9, 10] In the instant case from the evidence the city of Norfolk opened Redgate avenue on the south side nine feet six inches from the driveway, which left four feet six inches of the platted street unaccepted or unappropriated as part of the yards of the abutting property.  It assumed no obligation toward the public with respect to that four feet six inches which appeared to users of the street to be part of the abutting lots, and was notice to the public that it was no part of the street. It could allow without liability the owners of the adjoining lots to make use of the same in the same manner as if they owned in fee to the edge of the sidewalk.  It is a matter of common knowledge that the owners of lots abutting public sidewalks erect and maintain fences and copings along the same, and that no obligation is imposed upon the cities thereby to remove or inspect same unless such structures are openly dangerous.

[11] In the case at bar there was no act of commission

or omission on the part of the city that could be in law construed to be negligence.   It might be conceded that the city should not have permitted the fence and coping in the paper portion of the street, but as an obstruction of the public way it was not the proximate cause of her injury as she did not walk into it, nor is there any evidence that the city had notice either actual or constructive of the fact that on two previous occasions the top rail had fallen down.

[12, 13] The gravamen of this action against the city is its failure to keep the sidewalk in a reasonably safe condition for pedestrians.   The defect was the falling of an inch and a quarter gas pipe from the adjacent fence—across the sidewalk—how or when it got there, or how long it had been suffered to remain there, the evidence does not disclose.   But to meet this lack of proof the defendant in error claims the city was negligent in allowing the fence in its condition where it was, because it was *potentially dangerous.*   Cities may be held liable for structures erected by others, such as bill-boards by the side of a street and falling on pedestrians, but there is no liability in the absence of notice to the city that the structure was dangerous and not potentially dangerous.   The doctrine of *res ipsa loquitur* is not applicable to municipal corporations.   *Du Bois Borough* v. *Pancoast,* 218 Fed. 60, 133 C. C. A. 662.

[14] As a matter of law, the city not being liable for permitting the fence to be erected near the sidewalk in that part of the street left in a state of nature, nor any evidence of notice, actual or constructive, to the city that the fence was dangerous, or proof that the pipe had remained across the sidewalk such length of time as to amount to constructive notice that the sidewalk was unsafe, there was no proof of negligence upon

which the jury could base a verdict and the trial court should have sustained the motion of the city and entered judgment for it *non obstante veredicto.*

Therefore this court will set aside the judgment against the city of Norfolk, annul the verdict of the jury, and enter judgment in its favor as the trial court should have done.

*Reversed.*