(124 So. 904)

**SPENCER v. BLANKE MFG. & SUPPLY CO.**

**(2 Div. 934.)**

Supreme Court of Alabama.   Oct. 31, 1929.

As Modified on Denial of Rehearing Dec. 19, 1929.

R. B. Evins, of Birmingham, for appellant.

Hobbs, Craig & Brown, of Selma, for appellee.

SAYRE, J. Action by appellee against Gallion Creamery Company, which the evidence showed to be a joint adventure, W. M. Spencer and others whom appellee, plaintiff, sought to charge as parties to that adventure. Plaintiff had judgment against the creamery, W. M. Spencer, and one other. Spencer alone appeals.

Plaintiff's claim was evidenced by a series of promissory notes executed as were the notes considered in the case of Briel v. Exchange National Bank, 172 Ala. 477, 55 So. 808, and payable to plaintiff. These notes, signed "Gallion Creamery Company, Samuel E. Sparling, Pres. W. M. Spencer, Treas.," evidenced, prima facie, the personal liability of defendant, appellant Spencer, subject to be shifted by pleading and proof. The authorities for this proposition of law are cited in the Briel Case, supra. See also section 9048 of the Code in this connection. The decision in Peabody School Furniture Co. v. Whitman, 6 Ala. App. 182, 60 So. 470, cited by appellant, was based upon the evidence in that case in which the Briel Case was cited with apparent approval along with others, none of which were to a contrary effect.

Appellant insists that he was entitled to the general charge requested on his behalf in the trial court—this upon the theory that the evidence showed that he was never a member of the joint adventure, the Gallion Creamery Company, and that he had signed the notes in suit as agent, attorney in fact, for the creamery and not as joint obligor or as surety. The burden of proof as to that rested upon appellant. Dr. Sparling, who had been a member of the creamery company from its inception and its president, testified that "Mr. W. M. Spencer was a member of the board"—meaning the board of directors elected by the creamery company for the conduct of its business affairs—"from the point of view of participating * * * in all its transactions of business. Mr. Spencer was as much a member of the board as any other person. In fact, he was a member of the board as much as myself. He attended the meetings of the board regularly. He voted at those meetings like any other director * * *. He was

352

the head of it." From this, in connection with other testimony shown by the record, the court thinks the safer conclusion to be that the question just here at issue was one for jury decision in the first place, which is to say merely that there was some evidence with a tendency to sustain appellee's contention, and so that the general charge requested by defendant, appellant, was refused without error. The court is however of opinion that the greatly preponderating weight of the testimony went to sustain the proposition that appellant was never a member of the creamery company, that his activity in and about its affairs should be explained upon a different hypothesis, and that he signed the notes in evidence "W. M. Spencer, Treas." along with "Samuel E. Sparling, Pres.," for the purpose only of authenticating the signature of the "Gallion Creamery Company."

A director of a joint adventure is not necessarily a member; he may be merely an agent. The paper signed by the original members of the adventure upon its organization as "a sort of working agreement" was not signed by appellant. According to the undisputed testimony, the later practice was described as follows: "The only thing necessary to do to become a member was to bring cream to the Creamery. If a man brought cream to the Creamery he was a member and had a right to vote and vote on the board of directors." And the same testimony described the method of ascertaining and dividing profits. The language of the agreement between the parties to the joint adventure was: "This association shall include any person who delivers dairy products to the cooling station at Gallion, Alabama, and signs this agreement, but upon ceasing to deliver dairy products for a period of ten days successively, shall cease to be a member." The testimony is without dispute that appellant at no time delivered dairy products to the creamery and at no time participated in the profits, if any, which were ascertained and distributed at the end of each period of 15 days. But appellant was interested in and sought to contribute to the success of the adventure for the reason that it was the undertaking of his neighbors and friends, and, in the beginning, when funds were needed to put the adventure upon its feet, had lent to them a large sum of money which he sought, in part, to recover by helping it to a successful business. It is clear that the larger affairs of the creamery were intrusted to Dr. Sparling and appellant, and the doctor, testifying as a witness for appellee, said: "It strikes me that Mr. Spencer was as much a partner as I was." "That," he conceded, "is for the court to determine. I don't know whether he was a partner or not." It may be that this and the first-quoted testimony of the witness should be properly classified as "testimonial nonentities" so far as concerns

the issues of law and fact upon which this case turns (Hicks v. Burgess, 185 Ala. 587, 64 So. 290; Stockburger v. Aderholt, 195 Ala. 58, 70 So. 157), for the reason that it was wholly immaterial or merely an opinion, since the witness further said that appellant sent no milk to the creamery, "contributed nothing to its capital stock and was to receive nothing in the way of profits." Appellee also dwells upon the fact that appellant in his communications to appellee's attorney in reference to the claim here in dispute frequently used the words "we" and "our." But appellant was speaking as attorney (at law) for the creamery, as his letters show, and we attach no importance to the fact that he said "we" and "our." So then, without committing the court to the proposition of "testimonial nonentities" in the case disclosed by the record, and therefore without affirming that there was no-scintilla of evidence to support appellee's case, but rather basing our conclusion upon the categorical affirmations of all the witnesses, our judgment is that, so far as concerns the evidence thus far considered, appellant's motion for a new trial should have been granted on the ground that the verdict was contrary to the preponderance of the evidence—a preponderance which the jury should have made effective.

But, further, the notes in suit contained a provision as follows: "This note is secured by lien upon Pasteurizer covered by mortgage this day made by said Gallion Creamery Company and is one of a series of twelve notes of even date hereof numbered 1 to 12 inclusive, payable monthly, beginning 6/15/23. It is specifically agreed that if any one of said notes shall remain unpaid when by its terms it shall become due and payable, all of said series of notes including this note shall at once, at the option of the payee herein, become due and payable with interest. And it is further agreed and contracted that if this note is placed in the hands of an attorney at law for collection, or has to be sued upon, an attorney's fee of ten per cent., in addition to the principal and interest, together with all the costs of collection will be paid, which shall be added to, and become a part of the judgment." Appellants' testimony—and it was uncontradicted—was to the effect that, being informed that these notes were in a bank in Demopolis waiting signature, he went to the banker, who "had the notes and a mortgage," but refused to sign the mortgage for the reason that he had no such authority from the creamery company. His objection was to some of the collateral provisions of the notes. The witness further testified: "Later I saw Dr. Sparling on the street. I went back there and told Mr. Bailey I would sign the notes because I was authorized by the Gallion Creamery Com

pany to countersign, or sign this note as treasurer, but I was not a member of the company, I told Mr. Bailey I was not a member of the Gallion Creamery Company and that I was signing the notes only under the authority given me by the Creamery Company as treasurer." The argument from this testimony and the supposed implications thereof appears to be that, there having been no opportunity for intervening action by the board of directors, nor any evidence as to what passed between appellant and Sparling, nor any authority in Sparling to authorize a signature for the Creamery, the inference should be drawn that, when appellant signed "W. M. Spencer, Treas.," he intended to become personally responsible, and in this connection, as we infer, appellee cites section 9045 of the Code as follows: "Where the language of the instrument is ambiguous, * * * the following rules of construction apply: * * * (7) Where an instrument containing the words 'I promise to pay,' is signed by two or more persons, they are deemed to be jointly and severally liable thereon." The argument, otherwise and more briefly stated—and this substantially in the language of the brief—is that, because appellant himself said that he had no authority from the creamery to sign the notes as framed, he must be held liable personally. But appellant's language was that he had no authority to sign the mortgage, and that the notes were not drawn in agreement with the previous contract between the creamery people and appellee's sales agent. After seeing the president—so-called—of the creamery, Dr. Sparling, appellant signed the notes as we have indicated. Section 9044 of the Code provides—to quote its here relevant part—that: As between immediate parties, * * * the delivery, in order to be effectual, must be made either by or under the authority of the party making, drawing, accepting, or endorsing, as the case may be; and in such case the delivery may be shown to have been conditional or for a special purpose only."

■ The action here is by the payee against the alleged makers. Appellant was entitled to make proof of the fact that no consideration for the notes in suit moved to him and that he was not a surety. Hardegree v. Riley, 219 Ala. 607, 122 So. 814, 815. He and Sparling had authority to sign the notes as managers. 33 C. J. p. 873. The sections of the Code which have been referred to fix the liability of makers, etc., whose notes have passed into the hands of third parties, but are, for that matter, codifications of the common law. Appellant was entitled to show, as we have already said, that no consideration had moved to him for his signature and that he signed the notes in suit for the purpose only of putting them in form to witness the act and obligation of the creamery. It was shown without dispute that the management of the business affairs of the creamery adventure had been committed in practice, if not expressly, to Dr. Sparling, who was a member of the association, and to appellant, who had lent his money, had besides a neighborly interest in its success, and upon these considerations acted as agent and attorney. In the circumstances stated we find nothing in the testimony—the material parts of which have been quoted—to rebut appellant's contention that in signing these notes he acted as agent for the creamery, as treasurer, and did not thereby become personally responsible as a member of the adventure or as surety. This conclusion rests upon the only reasonable interpretation of the evidence and should have been given effect upon the hearing of appellant's motion for a new trial.

Reversed and remanded as to Spencer. As to the other defendants in the trial court the judgment is not affected. Tullis v. Blue, 216 Ala. 577, 114 So. 185.

ANDERSON, C. J., and THOMAS and FOSTER, JJ., concur.