167 So. 276

**CITY OF TUSCALOOSA et al. v. FAIR.**

6 Div. 793.

Supreme Court of Alabama.

Feb. 13, 1936.

Rehearing Denied April 9, 1936.

S. H. Sprott and Reuben H. Wright, both of Tuscaloosa, for appellant City of Tuscaloosa.

Harwood & McQueen, of Tuscaloosa, and Martin, Turner & McWhorter and Walter Bouldin, all of Birmingham, for appellant Alabama Power Co.

Beddow, Ray & Jones, of Birmingham, and Foster, Rice & Foster, J. G. Madison and Hyman Rosenfeld, all of Tuscaloosa, for appellee.

FOSTER, Justice.

Appellee sued to recover damages for personal injuries caused by stepping in a hole in August, 1932. The hole was 18 or 20 inches deep and about 16 inches in diameter, as some of the evidence tended to show. It was near the intersection of Greensboro avenue, extending north and south, and Seventeenth street, extending east and west, in the city of Tuscaloosa.

The complaint, the claim for damages filed with the city, and much of the evidence and some of the briefs refer to the latter street as Eighteenth, and some of the evidence and briefs, and all of the maps, refer to it as Seventeenth street. But they refer to the same location, since it appears that extending west of Greensboro avenue it is called Eighteenth, and east it is called Seventeenth, and no point is made in respect to such a situation.

Along the east side of Greensboro avenue there is a paved sidewalk of customary size. Between the west line of that walk and the paved portion for vehicular travel there is space of 31 feet and 3 inches, called a parkway or grass plot, not unusual in such a situation. There is no sidewalk, paved or otherwise, marked along the south side of Seventeenth street, approaching the intersection. But at the intersection on the southeast corner the entire space west of the paved sidewalk on Greensboro avenue, extending north to Seventeenth street and west to the paved driveway, was a space without mark for sidewalk or any sort of designation for foot travel. But the space usually so traveled was near where the hole was situated in which plaintiff stepped. The hole was about halfway between the curb on the west and sidewalk on the east.

The injury occurred in August, and the tendency of the evidence was that the city had kept the parkway in order by having its servants mow the grass periodically, both before and after the accident.

Another person had stepped in the hole about two weeks before that, but that circumstance does not appear to have been reported to the city. Otherwise there is no evidence that any one had seen it before plaintiff was injured.

After plaintiff was injured, the hole was dug out by the city, and there was found the butt of two chestnut stumps of a sort used for wire lines; one in bad state of decay, immediately under the sink, and one not so badly decayed about 6 inches to one side, over which there was no sink. There is evidence that at about that location there had been a post to which was attached a guy wire of the Alabama Power Company, extending to its wire line post at the curb; and that it had made a change there about 15 months before the injury to plaintiff, whereby the guy wire was removed and the post no longer appeared. Those posts were also in the course of an old wire line long before removed. It does not appear just what was done about either stub at the time defendant moved the guy wire, nor how the place was left or appeared, or how the work was done at that time, except as may be inferred from the fact of the hole 15 months afterward and its appearance at that time. There is no evidence that it was seen in the meantime.

The witness Spiller testified: "It was an old hole with grass growing around it. It wasn't a fresh hole. It had the appearance of being an old hole that had been there for sometime." And again: "It occurs to me that the hole or piece of post that was left in the ground had sunk down from the top of the ground. It seems as if it had recently rotted off and sunk down. Grass and weeds growed up around the hole. The street gang cut them all down. They had street gangs out working there before and after that time. I don't recall them being there before that summer. I presume the city had a street overseer at that time. * * * There was nothing to keep anybody from seeing that hole if they looked for it in the day time. * * * The city cut the weeds and grass there before the accident and afterwards periodically. They had a regular mowing machine, and mowed the grass and weeds on that parkway."

Again, by the same witness, on page 91: "Right where the hole was, was not level before that, it was sunk, gave down like a pan shape. The ground was flat there,

133

there would be a sink like a pan shape, just a sink in this part of the ground for ten inches around. * * * I didn't notice any hole there the day before. It wasn't level right where the hole was, it was sunk, gave down like a pan shape. * * * Both the hole and the ground it had grass and trash that had accumulated. There was litter there just like a hole would be littered on top where you would not pay any attention to, nobody in the world would notice it, you could pass it half a dozen times a day and not notice there being a hole, looked like it piled in. * * * There was trash and pieces of timber and trash like chips and things like that, down inside was crusted ground where it had given away. There wasn't any fresh dirt in it. * * * There was a kind of crust there." He never saw the hole before, though he often passed that way.

The suit is against the city of Tuscaloosa, Alabama Power Company, Western Union Telegraph Company, Postal Telegraph Company, Southern Bell Telephone & Telegraph Company, and American Telephone & Telegraph Company. The court gave the affirmative charge for all the defendants, except the city and Alabama Power Company. Judgment was rendered on verdict against both of them, and they each separately appeal and separately assign errors.

The cause of action against the city was in not removing a dangerous condition, and that against the power company was in creating that condition. They could both be sued and the causes of action united under sections 2029, 2030, Code.

It is the duty of the city to use reasonable care that no such danger shall remain in a public street where people have the right to travel, although it was caused by another. If it was not caused by another, the city is liable without the necessity of making another a party. If it was caused by another, the city has the right to have the liability of that other tested, and, if found liable also, such liability takes priority over that of the city. City of Birmingham v. Carle, 191 Ala. 539, 68 So. 22, L.R.A.1915F, 797.

But the liability of each is dependent upon different duties enjoined by law. The negligence of a city which does not cause the danger is in the failure to remedy the defect "after the same had been called to the attention of the city council, or after the same had existed for such unreasonable length of time as to raise a presumption of knowledge of such defect." Section 2029, Code; City of Birmingham v. Carle, supra; City of Decatur v. Gilliam, 222 Ala. 377, 133 So. 25.

The Assignments 12, 13, 14, 15, 16, 22, 23, 24, 26, 27, 28, 29, 30, 31, and 35, by the City. Some of those assignments point out the fact that the trial court approved a contention that this duty of the city extended to a grass plot or parkway such as here described, and that persons have a right to walk across it (12, 13, 14, 15, and 16). This is correct, as held in the Carle Case, supra. And in other assignments the court refused to hold that no one has the right to travel on or over such space when there is a paved walkway adequate for such use, and that, if he is injured by reason of a defect when he does so, the city is not liable, even though he uses due care, and the city has not done so.

But such is not the rule approved in Alabama and in many other states, City of Birmingham v. Carle, supra; Butler v. McMinnville, 126 Or. 56, 268 P. 760, 59 A.L.R. 381, note, page 387, made more emphatic when, as here, there is no designated walkway for making the crossing, 44 Corpus Juris, 1027.

When one walks on or across such a parkway, he must use reasonable care to detect and avoid defects. Carle Case, supra; 44 Corpus Juris, 1066. When walking along or across a designated and marked sidewalk, one need not use such reasonable care. City of Decatur v. Gilliam, supra. He has the right to assume that there is no defect. But not so on a parkway. The city may prohibit walking on such space designated and marked, and, when so, it is said not to be liable for injuries caused by a defect. 13 R.C.L. p. 260, § 214. But, when there is no such prohibition, there is a diversity of opinion elsewhere as to whether there is a duty by the city to remedy defects as respects the right of one walking on such space in the exercise of due care. Norfolk v. Travis, 149 Va. 523, 140 S.E. 641, 56 A.L.R. 214, note, page 220; 13 R.C.L. 381, 466; 29 Corpus Juris, 683. But this court has adopted the rule of due care by the city under such circumstances, as we have shown.

The trial judge clearly and correctly charged the jury in respect to the duty of the city and of the plaintiff as she was crossing this parkway.

In that respect there was no error prejudicial to the city.

*Assignments 18, 19, 20, 35, and 36 by the City.* The city is here taking the position that it was due the affirmative charge, or, in the alternative, a new trial for lack of evidence sufficient to show notice of the dangerous place actual or constructive.

The defect was near where people ordinarily cross Greensboro avenue to the west of the south side of Seventeenth street. In going from the paved walk on the east side of Greensboro avenue to the west to cross it, there is no walkway designated or marked, as we have stated. Plaintiff and her husband had lived near there for about 7 years, and often made that crossing as on this occasion, day and night, and testified that they never saw this hole before. Others also testified to frequent use of the crossing and parkway for ball playing and traveling, and never saw the hole until about 2 weeks before, when another person stepped in it.

We have referred to the fact that "grass was growing around the hole," that the "street gang cut them (grass and weeds) all down," that "there was nothing to keep anybody from seeing that hole if they looked for it in the day time," and that "the city cut the weeds and grass there before the accident and afterwards periodically," and that "they had a regular mowing machine, and mowed the grass and weeds on that parkway," and that "it was sunk, gone down like a pan shape," and that "both the hole and the ground around it had grass and trash that had accumulated. There was litter there just like a hole would be littered on top where you would not pay any attention to, nobody in the world would notice it, you could pass it half a dozen times a day and not notice there being a hole, looked like it piled in," and that "there wasn't any fresh dirt in it * * * there was a kind of crust there."

We understand from that description that it was intended to mean, and shows, that a person walking along there would not notice it by ordinary observation. No one is shown to have done so until another person stepped in it about 2 weeks before plaintiff did. And it does not appear that the city had notice of that accident.

■ The city is not required to make an examination in a place not set apart for such travel, as with a fine-tooth comb, and would not ordinarily be negligent in not noticing the defect under the conditions here described. Negligence is the failure to observe the care of an ordinarily prudent man whose duty is to detect and remedy defects. His duty is affected by the circumstances, such as the frequency of the use of the section, and the manner of its use, and its appearance. If a defect is not open to ordinary observation, and the circumstances do not reasonably call for one more careful, it may not be negligent to fail to discover, regardless of the length of time it has continued.

■ The city may be liable for negligence either in failing to discover or in failing to remedy the defect after discovery. An allegation of negligence in allowing the defect to remain may be sustained by showing either of those aspects. City of Montgomery v. Ferguson, 207 Ala. 430, 93 So. 4; City of Birmingham v. Scott, 217 Ala. 615, 117 So. 65; City of Birmingham v. Norwood, 220 Ala. 497, 126 So. 619.

■ We do not think the evidence is sufficient to show negligence in failing to discover the defect, unless it be in connection with the mowing of the grass. But, since the defect was present, and the city's servants mowed the grass over or about it, the jury could infer that they did in fact see it, or were negligent in not doing so while mowing the grass, and that this continued for such length of time before plaintiff was injured as that by reasonable diligence it should have been remedied by that time.

■ While the complaint alleges the existence of the hole for a long and unreasonable length of time, to wit, one year or more, it also alleges that her injuries were caused by the negligence of defendants' officers or servants in permitting said defect to remain. Under such circumstances, it is not necessary to be exact in proving the averment as to the length of time in which the defect existed. Moreover, it is not essential, if the city be found to have had actual notice, or was negligent in not seeing the defect when mowing the grass. When the necessity of proving a fact is in connection with only one aspect for relief, omission to prove it is not fatal, if the elements of the other aspect, as alleged, are proven. Southern Rwy. Co. v. Lee, 167 Ala. 268 (6), 52 So. 648; Kelly v. Tatum, 222 Ala. 655, 133 So. 703 (6), and cases there cited; Birmingham News Co. v. Little, 226 Ala. 642, 148 So. 398.

We think the jury could have reasonably found that the city was negligent in not dis-

covering or remedying the defect after it was discovered.

The court was careful to find out just what the jury intended as to the amount of their verdict, and nothing appears to show that it was not properly understood.

In that connection the record shows that the jury returned two separate verdicts, each for $1,500, one against Alabama Power Company and one against the city. The court thereupon instructed the jury that they should make a joint award against both defendants rather than separate. If they intended it to be $1,500, let their verdict be joint for that amount. If it was intended to be $3,000, make their verdict so recite. The jury then withdrew and returned later with one verdict for $3,000 jointly against both defendants. Exceptions to this procedure were noted.

The rule is that damages cannot be separately apportioned among joint defendants in a tort action. City of Birmingham v. Hawkins, 196 Ala. 127, 72 So. 25; Layman v. Hendrix, 1 Ala. 212; 64 Corpus Juris, 1084.

When the verdict of a jury is not in proper form, the court may, before they are discharged, give them proper instructions and have them reconsider the matter and return a verdict, in due form. Higginbotham v. Clayton & Webb, 80 Ala. 194; Allen v. State, 79 Ala. 34; Comer v. Jackson, 50 Ala. 384.

The procedure followed by the court in this instance was exactly as it should have been, pursuant to those authorities.

*On Appeal of Alabama Power Company.* The city and this company made separate appeals and separate assignments of error. This appellant argues only two principles: (1) That its motion for a new trial should have been granted because contrary to the great weight of the evidence; and (2) that the verdict was excessive.

The wrong charged to the city is not the same as that charged to the company, as we have stated. The duty of the city was to use due care to discover the defect and remove it. That of the company was to use due care not to create it. The duty of the company to remove it was ancillary to its duty not to create it. If it exercised due care in respect to its creation, there was no duty to discover the defect later nor to remedy it unless it was actually discovered, of which there is no tendency of the evidence.

The first count charged that the company "removed a pole * * * or other object (at that point) and negligently left or negligently permitted to be left in said street at said point or place the aforementioned deep cut or hole at said point or place, and negligently left or negligently permitted to be left said hole or cut remaining at said point." Count 2 charged of the company that it "cut down or removed the pole or poles located at said point, and negligently left the aforementioned deep hole or cut in said street or negligently left said street at said point or place in such condition that said deep hole or cut developed there as a proximate result of cutting down or removal of said pole, and negligently permitted said hole or cut to remain in said street at said point."

The court charged the jury that, before the plaintiff can recover of the company, the jury must be reasonably satisfied that its servants in the line and scope of their employment "left that guy pole there and * * * sawed it off or in a condition there which it would rot and decay, and it was negligently left there, * * * or left it there in such a condition as to create a hole there and (this) was negligently done," and that the jury must determine whether "it was negligence on their part to leave it there in the manner in which it was left," putting the burden on the plaintiff to prove those facts.

We think that the court correctly interpreted the duty of the company respecting this transaction and the burden of proof.

The whole inquiry in respect to this duty is whether the company exercised due care not to create such a defect, and then, if it did not, whether the defect resulted from such negligence as a proximate cause.

We think that the evidence is such as that it was a jury question, not to be disturbed by us, whether it was the defendant's servants who removed the guy wire from anchorage to a post at or near that point. If they so find, then also that the company did more and cut off one of the posts below the ground and filled up the hole, and left it without further attention, may be inferred (there is no evidence that two such stumps were used for the guy wire), and the jury must also find that the one which the company cut off and covered up was that which was directly under the sink. If they did all of that, the question is whether there was evidence from which

it may be fairly inferred that it was not done with ordinary care so that, as a proximate result of such failure, the defect resulted. Unless there is some evidence of just what was done, and just how it was left, and in the absence of proof that no one else did anything in that connection from then to the time when the defect was shown to have been first discovered, it must fairly be inferable from the fact of the occurrence and the appearance of the hole and the stump dug out of it that, had the company done the work in May, 1931, with the observance of ordinary care, such a condition would not have existed in August, 1932, and that it was not produced by some intervening independent cause, with which defendant had no connection; and which was not foreseeable by defendant when it left the operation. The rule in that connection is that, if defendant left a condition upon which other causes would likely operate, so as to be likely to produce the dangerous defect, and which did so operate, and thereby produced such defect, defendant would be culpably negligent. See cases cited in dissenting opinion in Braden v. St. L.-S. F. R. Co., 223 Ala. 659, 137 So. 663.

It must therefore be shown by direct or circumstantial evidence that defendant created such a likely condition. The only direct evidence of that is that there was a post at or near the location of the hole to which was attached a guy wire to the company's pole at the curb; that in May, 1931, the company removed that guy wire, after which the pole did not appear. From that time until in August, 1932, no one observed the place, but then there was a sink of about 18 or 20 inches. In digging into it, there was under the bottom of the hole an old chestnut stump of a post in bad state of decay, said to be approximately 20 years old (Exhibit D; transcript, page 106); and about 6 inches from it was another chestnut stump of a post extending nearer the top of the ground (Exhibit E), and over which there was no sink, said to be of approximately 5 to 10 years old (page 106); but had apparently been "bothered by termites."

From those circumstances can it be reasonably inferred that the company operated on one stump and not the other? The evidence of an expert was that the smaller one (Exhibit D) in the sink hole was the older. There is nothing on which to base a fair inference of whether the company operated on one or the other. We have examined them, and get no clear idea from doing so. It would be but a conjecture to say whether it was one post or the other that may have been the anchor for the guy wire, if either was. If that could be found, to hold that the company was negligent must be found to arise from the failure to use due care in filling the hole. Did the decay of the post from May, 1931, to August, 1932, cause the sink, or that in connection with a settling of the earth in the hole during that time caused by natural packing produced by the moisture in the ground or some other cause, wholly conjectural? Is it reasonable that one would anticipate a rotting of the chestnut post in 15 months so as to shrink 18 to 20 inches? It does not seem to us that such could have been reasonably anticipated, if it occurred.

The burden is not on the defendant to rebut a presumption of negligence, but is on the plaintiff to show negligence to the reasonable satisfaction of the jury. When circumstantial evidence is relied on to do that, it must do more than show that the company might have been negligent. This court has often referred to the principle that findings of fact based on conjecture merely cannot be upheld. Southern Ry. Co. v. Dickson, 211 Ala. 481 (10), 100 So. 665 (where many cases are cited); McKinnon v. Polk, 219 Ala. 167 (3), 121 So. 539; Mobile & Ohio R. R. Co. v. Williams, 221 Ala. 402, 129 So. 60.

We think a finding of negligence by the company in this connection on this evidence is based on conjecture merely, and that it is our duty to vacate it. This is predicated upon deductions from the evidence most unfavorable to the company, and not on any disagreement with the trial judge or jury on the credibility of witnesses.

The result is that there is no error on the appeal of the city separately considered, but there is error on the appeal of the company.

There was a rule of the common law thus expressed in our case of North Alabama T. Co. v. Hays, 184 Ala. 592, 64 So. 39, 40: "The general rule is that joint judgments are to be treated as entireties on appeal, and a reversal on the appeal of one defendant will require a reversal as to both, the reason and policy of the rule being that, where the rights and obligations of the parties are necessarily blended in the judgment, and are thus dependent one upon the other, though they be not strictly joint, the

appellate court will render such judgment as will permit and require the entire controversy to be settled in one proceeding, in which the rights and liabilities of all parties may be considered and consistently determined." This rule has been applied in some of our cases. Massey v. Oates, 143 Ala. 248, 39 So. 142; Huckabee v. Nelson, 54 Ala. 12.

It is said in Washington Gaslight Co. v. Lansden, 172 U.S. 534, 19 S.Ct. 296, 304, 43 L.Ed. 543: "That it might work injustice to one party defendant, if it were to remain intact as against him while reversed for error as to the other defendants, then we think the power exists in the court, founded upon such fact of possible injustice, to reverse the judgment in toto, and grant a new trial in regard to all the defendants."

It is not unusual for us to reverse and remand as to one appellant and affirm as to another. Inland Waterways Corporation v. S. S. S. & I. Co., 223 Ala. 397, 136 So. 849; Spencer v. Blanke Mfg. & Supply Co., 220 Ala. 350, 124 So. 904; Tullis v. Blue, 216 Ala. 577, 114 So. 185; Young v. Woodward Iron Co., 216 Ala. 330 (12), 113 So. 223.

But that is so only "when the interests of the parties are several and independent, so that a proper decision of the case as to one is not dependent on the judgment as to the others." 4 Corpus Juris, 1183.

In this case, on another trial, the jury may again find the company liable, and, if so, under section 2030, Code, it should pay the judgment and relieve the city. But the award may not be the same, and that would complicate matters. The jury may find that the company is not liable, and thereby, as declared in the Carle Case, supra, 191 Ala. 539, page 544, 68 So. 22, L.R.A.1915F, 797, the entire liability would fall on the city. So that the possibility of injury to the city by an affirmance as to it and reversal as to the company is apparent.

The other defendants, Western Union Telegraph Company, Postal Telegraph Company, Southern Bell Telephone & Telegraph Company, and American Telephone & Telegraph Company, were successful, and only the prejudiced defendants appealed.

We held in Tullis v. Blue, 216 Ala. 577, 114 So. 185, that the rule which ordinarily requires that a reversal of a joint judgment as to one codefendant requires a reversal as to all should not be applied to cases in which only the prejudiced defendants appeal.

The judgment will not therefore be reversed as to them.

We need not here discuss the question of whether the city may review on appeal a judgment in favor of a third party defendant made so under the requirements of sections 2029 and 2030, Code. But do not think that an ordinary appeal by the city from the judgment is sufficient to make such successful defendants parties appellee to that appeal taken by the city, without notice to them to defend on it.

The notice that was given to those defendants was under section 6143, Code, by which they are cited to appear and join in the appeal, as appellants. Such is not a citation to answer an appeal taken by the city to reverse a judgment in their favor. Since they failed to join in the appeal under section 6143, they are not parties to the appeal as the result of that citation (Hawkins v. Barber (Ala.Sup.) 163 So. 608 [1]); nor are they otherwise so. The judgment in their favor could not be set aside on an appeal in which they are not parties. The citation requiring one to defend on appeal is jurisdictional to the right of this court respecting that party.

We cannot consider the city's assignments of error to the extent that they refer to the successful defendants not parties to this appeal. But the judgment against the city and Alabama Power Company is reversed and remanded for another trial as to them.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.

### On Rehearing.

FOSTER, Justice.

There is no evidence to sustain a finding whether the hole was left when the guy wire was removed or whether it developed later by the sinking of the soil.

There is evidence of the fact that the general locality was frequently used for many purposes, and that no one doing so had observed the hole. Its appearance in August, 1932, as described, does not tend to

[1] 231 Ala. 53.

138

show whether it was left there in that condition in May, 1931, and continued unobserved during that time, or developed later by a sinking of the soil. It is wholly conjectural as to when it occurred. Verdicts may not be predicated on conjecture.

After again reading the evidence, we fail to find any to the effect that the hole was at the exact spot where the guy wire was attached to the pole, as distinguished from one six inches away. No one undertook to make such a distinction. It was not only uncertain as to whether the wire was attached to one or the other post, but we think the better, if not the only fair, inference is that it was not the one deep under the sink hole. That was much older, and cut off deeper, and more decayed. The newer was probably the last one standing. No subsidence occurred over it.

Under such circumstances, to hold that the jury could reasonably infer that the company operated on the old one, and cut it off deeper than the other, and filled up the hole carelessly, or without due regard to the probability of it sinking and thus causing a dangerous hole, in the absence of all evidence in that regard, is extending the right of plaintiff beyond what seems to us to be reasonable.

In Houston v. Waverly, 225 Ala. 98, 142 So. 80, the evidence was that a gasoline tank was buried under an unimproved sidewalk; that it was removed, and the hole filled with loose dirt which was packed; that rainwater and use of a hydrant near by caused the earth to settle, creating a depression in the sidewalk. The court held that it was the duty of the company which did the work to anticipate and take care of the subsidence of the loose earth from natural causes. That duty resulted, we think, from the size, condition, and location of the hole, its manner of being filled, and the fact that the subsidence was due clearly to those causes, and that there was a reasonable probability of such an event resulting from them.

Here it is conjectural whether the company did any act in respect to this exact spot, or what caused the subsidence, or the material or manner of filling the hole, or that such subsidence should have been reasonably anticipated from such occurrences.

Application overruled.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.