[City of Birmingham v. Carle.]

# City of Birmingham *v.* Carle.

## *Injury for Defective Sidewalk.*

(Decided January 14, 1915. 68 South. 22.)

1. *Municipal Corporation; Defective Streets; Liability; Statutory Provisions.*—Under sections 1273-4, Code 1907, a city is liable for injuries resulting from the negligence of its agents within the doctrine of respondeat superior; or for injuries caused by a culpable neglect to remedy a condition negligently created by a person not related in service to the city, but in the latter case, the person negligently creating such a condition must be made a party, and a judgment against the city alone cannot be rendered, unless the person primarily liable is adjudged liable, provided such liability is not avoided by some personal defense.

2. *Same; Care Required.*—It is the duty of a municipality to take due care of the safety of public ways, so that those lawfully using them may not be negligently injured.

3. *Same.*—The general rule that the public ways in their entire extent should be reasonably safe for public travel, is subject to the qualification that municipalities may, in the exercise of a reasonable judgment, apportion the surface of the public streets, one part to the use of vehicles, and another part for pedestrians, with a parkway between; where adequate provision is made for travel both by vehicles and by pedestrians, and a reasonable actual apportionment between those ways for a parkway is made, such parkway may be protected against unnecessary use by travelers by appropriate guards set on or within the line of the parkway, but such guards must reasonably conform to the purpose intended and be constructed with due regard to the safety of the traveling public, and negligence in the location or character of such guard and injury as a proximate consequence thereof to a pedestrian, renders the city liable, unless such pedestrian is guilty of contributory negligence.

4. *Same; Care Required of Travelers.*—Persons on streets may assume that the ways are free from unlawful obstruction or dangerous defect so long as ordinary care on their part does not disclose such defect.

5. *Same.*—Where a street is divided into ways for vehicles and ways for pedestrians, with a parkway between, a pedestrian consciously leaving the way provided for him, and attempting to move on or across the parkway, is required to exercise care consistent with the circumstances, and may not act on the assumption that the parkway is free from obstructions, but must exercise due care to discover depressions or obstructions on the parkway.

6. *Appeal and Error; Review; Issue of Proof and Variance.*—A variance between the complaint and evidence will not be considered on appeal when not pointed out in the trial court as required by rule 34, circuit court practice.

7. *Municipal Corporation; Parkway; Use; Negligence.*—Whether the protection of a parkway between the sidewalk and street by a wire attacked to stakes was actionable negligence, for which the city was liable for injuries to a traveler tripping on the wire, was a question for the jury.

8. *Same; Contributory Negligence; Pleading.*—Where the action was for injuries to a pedestrian caused by tripping over a wire put up for protection of a parkway, between the street and the sidewalk, a plea alleging that the pedestrian was guilty of contributory negligence in that though there was provided a sidewalk, and though she knew that the parkway bordered on a sidewalk, and although it was dark, she negligently undertook to cross the parkway, instead of continuing along the sidewalk, and that she undertook to do this, heedless of her own safety, and without using her senses to guard herself against danger, presents the theory that the pedestrian took a dangerous course when a safe course was open to her, and was rendered bad for failure to allege knowledge of the existence of the two courses, and a choice of the dangerous one.

9. *New Trial; Newly-Discovered Evidence; Diligence.*—A new trial because of newly-discovered evidence will not be awarded where the party applying therefor could have procured the testimony for the trial by proper diligence.

10. *Trial; Argument of Counsel; Sufficiency of Objection.*—Where objection was interposed to argument of counsel, and the court in response thereto stated to the jury that the trial should be had upon the evidence under the law, and no further objection was interposed, and no further complaint thereof made, such improper argument was not ground for reversal.

APPEAL from Birmingham City Court.

Heard before Hon. C. W. FERGUSON.

Action by Mrs. Amy Carle against the City of Birmingham and another, for damages from a fall on the street. From a judgment for plaintiff against defendant city, it appeals. Affirmed.

The complaint claims damages for an injury which plaintiff alleges was caused when plaintiff "stumbled, tripped, fell, or was thrown by reason and as a proximate consequence of an obstruction, to wit, a wire extending over or across a part of the sidewalk at the intersection of Sixteenth street and Eleventh avenue south."

Plea 3 is as follows: Plaintiff herself was guilty of contributory negligence which proximately contributed to her said injury in this: That although there was pro-

vided a paved walkway five or more feet wide, running along Sixteenth street, and although she knew that a grass plot bordered on the outer edge of the paved walkway, and although it was dark or nearly dark, she negligently undertook to cross said grass plot when there was a safe way open to her to reach the point to which she desired to go, to wit, by continuing along the paved walkway, and this she undertook to do, heedless or thoughtless of her own safety, and without using her senses, to guard herself against danger and injury.

ROMAINE BOYD, and M. M. ULLMAN, for appellant.

HORACE WILKINSON, and G. R. HARSH, for appellee.

McCLELLAN, J.—(1) By Code 1907, § 1273, the liability of municipalities for damages for injuries done or suffered is limited to two distinct classes of negligent misconduct or omission, viz.: (a) Where the wrong done or suffered was the proximate result of culpable act or omission of some agent, officer, or employee engaged, within the line of his duty, in the municipality's service; (b) where the wrong done or suffered was the proximate result of culpable municipal omission "to remedy some defect in the streets, alleys, public ways, or buildings, after the same (i. e., defect as defined) has been called to the attention of the council, or after the same (i. e., defect as defined) had existed for such unreasonable length of time as to raise a presumption of knowledge of such defect on the part of the council." Further in said section (1273) it is provided, touching the second (b) classification, ante, that where the liability of the municipality results from the breach by the municipality of its duty to remedy the defect, as defined in the statute—a defect to the existence of

which the attention of the council had been called, or of which knowledge may be imputed in consequence of the unreasonable length of time the defect has existed, unremedied when the injury was done or wrong was suffered—the person or corporation culpable in respect of the existence of the defect as defined shall be "liable to an action on the same account by the party so injured." In the first class (a) are wrongs or injuries resulting from negligence of agents, etc., of the municipality, consistent with the doctrine of respondent superior; and in the second class (b) are wrong or injuries for which the municipalities are only liable for culpable neglect to remedy a condition negligently created or made or allowed to exist by a person or corporation not related in service to the municipality – a stranger to the municipal service or function.

New Code 1907, § 1274, requires that, where the municipality is sued, the person or corporation within the second class (b) defined in section 1273 shall be joined as a defendant, unless on appropriate demand the name of the so culpable person or corporation (stranger to the municipal service or function) is not furnished by the mayor within ten days after the demand; and an additional requirement and method for the joinder of such person or corporation is provided, where it develops that a person or corporation, within the second class (b) defined in section 1273, liable for the consequences of his or its culpable wrong, should have been originally joined as a defendant; and the plaintiff's failure to amend, so as to bring in such person or corporation as a defendant requires the nonsuiting of the plaintiff.

There is further provision in that statute (section 1274) forbidding the rendition of judgment against the municipal defendant under certain circumstances. Ac-

cording to this statute (section 1274), the circumstances under which judgment cannot be rendered against the municipal defendant alone are these: Where it is shown that the injury or wrong for redress of which the plaintiff sues was the proximate result of a defect created or existing by reason of the negligent act or omission of a person or corporation not related to the municipal service or function and for the culpable failure of the municipality, to remedy which defect the municipal defendant is made only solely jointly liable with such culpable person or corporation, unless there have been no service upon the person or corporation so initially culpable in the premises, or unless the judgment is rendered in favor of such person or corporation on some personal defense interposed by such person or corporation. The manifest legislative purpose was to prevent the rendition of judgment against the municipality for culpable neglect in respect of a condition not initially created by it, but for the negligent failure to remedy which it is made liable. In other words, where a defendant, within the description of the second class (b) of section 1273, is joined with the municipality as a defendant and served with process, judgment against the municipality alone cannot be rendered, unless the person or corporation, whose primary culpable act or omission give rise to and affords the essential basis for the municipal neglect to remedy the defect, as defined, is also adjudged liable, provided the liability of such person or corporation is not averted by some personal defense.

Other indicated conditions and prescriptions of the statutes (sections 1273, 1274) in this regard being met, the legislative result is to hinge municipal liability on the imposition of liability upon the initial wrongdoer, except in the event a sustained defense personal to the

[City of Birmingham v. Carle.]

initially negligent person or corporation intervened to avert the adjudgment of liability against such person or corporation. Pursuant to this general purpose, it is also provided in section 1274 that the execution on a judgment against the municipality and the initial wrongdoer shall first issue against the initially negligent defendant in the judgment, and the amount of the judgment is not demandable of the municipality, unless the initial wrongdoer is insolvent, or the initial wrongdoer can only respond in part, whereupon the municipality must pay the remainder. So, if there has been a joinder with the municipality of a person or corporation named in the mayor's response to the demand of the injured party, and the party so joined as a defendant is not shown to have been an initial wrongdoer, or if the jury, or the court trying the case without jury, may reasonably determine and do determine from the facts and circumstances in evidence that the thus joined party defendant was not initially culpable in respect of the defect defined in the statutes, or if some personal defense of such person or corporation is sustained, then the judgment may enter against the municipality only, and must be by it satisfied. In order to effect an orderly and certain administration of these statutes, and in order to adequately conserve the important rights by them recognized, and in order, further, to assure to the parties litigant the benefit of the conditional rights and liabilities arising from the joinder with the municipality of a person or corporaton conceived to be an initial wrongdoer, the trial court should formulate, preferably in a writing delivered to the jury, distinct questions embodying in plain phrase these ideas: First, whether the person or corporation joined with the municipality was negligent in respect of the creation or existence of the defect in consequence of which, if so,

[City of Birmingham v. Carle.]

the injury or wrong was done or suffered, and if such person or corporation was so negligent, and a personal defense was interposed by him or it, whether that defense has been found by the jury to be sustained; and, second, whether the municipality's culpability, as defined in the second class (b) of section 1273, has been sustained, and the jury should be required to respond categorically in the verdict, to the questions.

In the case at bar, in the response by the mayor to the injured party's demand, Mrs. Hitchcock was named as the party to be joined. There was no evidence tending to fix upon her any degree of culpability for the alleged obstruction about the intersection of Sixteenth street and Eleventh avenue, over which the plaintiff fell. The general affirmative charge for Mrs. Hitchcock was her due. It was properly given. The thus joined person not being found initially culpable in the premises, the municipality could take nothing because of her discharge If it was negligent, under section 1273, in failing to remedy the matter of the alleged obstruction at that point, it could not escape the judgment by reason of the failure to fix responsibility upon Mrs. Hitchcock.

(2) The plaintiff was a pedestrian. There was a six-foot artificial stone walkway laid along the property line of Sixteenth street, upon which she was moving. This concrete walkway appears to have had a smooth surface over its entire width and to have been without obstruction or defect of any kind at or about the point in question. The children of plaintiff had crossed the street from plaintiff; and she, seeing one of them about to recross the street and avenue at and over the square of their intersection when an automobile was approaching that point, started toward the child, and in going left the concrete walkway and undertook to cross at

an angle the grass plot, surrounding a line of trees along Sixteenth street, laid out between the concrete walkway and the gutter line marking the boundary on that side of the way made for and devoted to the use of vehicles, etc. In so doing she tripped and fell over a wire that was fastened to two stakes set in the opposite corners of the grass plot that ended on a line with the line of the intersecting avenue. This arrangement placed the swinging wire on the line made by the grass plot and the continuing paved walkway of the avenue. It thus appears that the wire or the stakes were not obstructive of the paved walkway on either the avenue or the street intersecting it. These stakes and the wire were put there by Dr. Hitchcock, since deceased, about the year 1910, approximately two years before plaintiff was injured, for the evident purpose of protecting the grass plot from pedestrians "cutting the corner" of the plot at that point.

It is too clear to admit of doubt that if this wire arrangement, permanent in character as it was, was an unlawful or wrongful obstruction of the street or avenue, it was a defect, within Code, § 1273, and so under the doctrine of *Bessemer v. Whaley,* 187 Ala. 525, 65 South. 542. The appellant filed its plea 3, which the report of the appeal will contain. Demurrers were sustained to it; and error is sought to be predicated of this ruling. This ruling presents the chief matter for review here.

Apart from the matter of liability of a municipality, in a concrete case, for an injury suffered in consequence of a defect in a public way or building, the general duty is by our law laid upon such institutions to take due care for the safety of the public ways and buildings, that those lawfully using or about them may not be negligently wronged or injured, in accord with the

"exclusive power and authority to control" conferred on municipalities.—*Bessemer v. Whaley, supra,* and authorities therein noted.

(3) The general rule is that the public ways for their entire length and width should be reasonably safe for uses consistent with the reason for their establishment and existence. But this general rule is subject to the necessary qualification that the municipal authorities may, in the exercise of a sound and reasonable judgment, fairly and with due regard to the public needs and welfare apportion the surface of public streets to the use of vehicles, to the use of pedestrians, and to ornamentation and beneficial uses resulting from parkways. This practice is quite general, if not universal, in residence sections of the cities, and in such sections of many of the towns, in this state. Where the walkway and the vehicle way are adequate to their respective public needs, there is no reason why an appropriate civic taste may not be expressed by allotting the remaining surface of the streets, between the two ways mentioned, to the commendable ornamentation and public advantage that trees, surrounded by grass plots, will afford. The protection from depredation of trees in streets has long been a subject of express legislative concern.—Code 1907, § 7834, and its several predecessors in that line. Such apportionment is of, and consists with, the authority and control the municipalities have conferred upon them in respect of their streets. Judgmatically administered, the particular power and authority under consideration is not without a practical, economic benefit in the way of a sensible avoidance of unnecessary expenditure for paving in our municipalities. Areas so apportioned to tree or grass plots are, of course, still a part of the street; and municipal duty in respect to such areas, as parts of streets, is

not suspended or annulled. Where, however, such apportioning is effected with due regard to making the before-mentioned two ways of travel adequate and reasonably safe for their purposes, the ever necessary, though not expressly declared, result is to warn pedestrians and travelers otherwise to take the ways provided for their movement over the streets and, while not necessarily penalizing entry upon such plots, to segregate them from general travel use. If not so, it is evident that the power and authority thus properly existing and justly exercised would be all in vain, and the public benefits to accrue therefrom would be in reality largely impaired, if indeed not destroyed.

Where there has been adequate provisions made for travel by pedestrians and by vehicles, etc., and a reasonable actual apportionment, between those ways, of the remaining surface of a street for grass or tree plots, these plots may be protected and guarded, against unnecessary use by travelers, by appropriate or suitable guards, set on or within the line of such plots. These guards should reasonably conform to the purpose intended, and so with a due regard to the safety of travelers on walkways and on the street proper between the curbs. Negligence in respect of the location or of the character or nature of such guards and injury in proximate consequence thereof will entail liability therefor, unless avoided by negligence on the part of the person injured.

(4) Travelers in streets to which respective parts are improved for and apportioned to a walkway and to the use of vehicles, etc., may assume that these ways are free from unlawful obstructions or dangerous defects, so long as ordinary care on their part does not advise them to the contrary.

(5) But a like assumption cannot be indulged in favor of a traveler who consciously leaves the way provided for one of his type, and, with knowledge that he is so departing, attempts to move over the part of the street devoted to ornamentation, etc. The care required of such a one must consist with the circumstances his stated course creates, for, with respect to movement by travelers over such plots, there cannot be imputed to municipalities the law-implied assurance to travelers using ways devoted to their use that they are reasonably safe and are free from harmful defects or dangerous obstructions. The known (to the traveler) fact that a distinct part of the street has been apportioned to a parkway, the lines of which are made by the actual improvement designed to facilitate the movement of persons and things over the street and marking their limits, is sufficient to warn the traveler, when he would leave the appointed way, that he may not act upon the assumption of freedom from obstruction that he may, in the exercise of ordinary care, rely upon where he is in the use of the way appointed for his movement. When a traveler would cross a parkway in a street, which he may do unless prohibited by ordinance or statute, he must exercise due care to discover depressions or obstacles (guards) along the lines of the parkways and within its borders, for he cannot assume that such parkways are free from obstructions or depressions, since manifestly they are not appointed and improved for the general use of travelers.

The Supreme Court of Missouri, in *Woodson v. Met. Street Ry. Co. et al.,* 224 Mo. 685, 123 S. W. 820, 30 L. R. A. (N. S.) 931, 20 Ann. Cas. 1039, and the Supreme Court of Georgia, in *Augusta v. Tharpe,* 113 Ga. 152, 38 S. E. 389, cited and relied on in brief for appellee, ruled in effect that the sidewalk in a street in-

cluded a parkway or tree plot. It may be conceded that the consequences flowing from the premise made by these decisions are opposed to the conclusions we have set down on this phase of the case. We have considered both of these decisions. They are not accepted as authoritative or influential pronouncements on the questions arising from the ruling on plea 3. While doubtless inferentially applicable to some of the conclusions hereinbefore stated, they are not in satisfactory point upon the particular inquiry, whether the measure of the pedestrian's care in the use of a parkway in a street for his movement is the same as when he is using an established and improved walkway in the street; or, to otherwise state the matter, whether such a one may assume that an appointed parkway is free from defect or obstruction the same way and to the same extent he may assume that an improved and adequate walkway is free from defect or obstruction? If the decisions from Missouri and Georgia must be taken as giving affirmative response to the stated inquiry, then our opinion is that they are unsound.

(6, 7) The questions of variance, if such there was in respect of the allegation describing a sidewalk and the proof disclosing that the subject of complaint was not on or over the sidewalk, was not pointed out below in accordance with (new) rule 34 of circuit court practice, adopted June 23, 1913, and to be found in 175 Ala. xxi. And it may be added at this point that whether the protection of the grass plot attempted to be afforded by the wire, attached as this was to stakes, was an effort to do that which might have been properly done in a negligent manner or by means not suggested by reasonable prudence, was for the jury to decide under the evidence in this record.

(8) Our opinion is that the plea (3) was not sufficient as a defense . It is patent that the plea's unclouded theory was not an attempt to invoke the rule we have pronounced as upon the duty of care a pedestrian is under when he consciously leaves an adequately provided walkway and moves across a platted area in a street. While the plea has in it suggestions of elements of averments appropriate to a sufficient plea asserting the non-observance of the stated obligation of care by a pedestrian, pursuing the course indicated, yet it interposes in most affirmative allegation, and with a predominating result, theories of duty in such cases, which are not really related to the matter of defense (contributory negligence) to which this court has given approval in such cases. The plea's predominant theory is that the plaintiff took a dangerous course when a safe course was open to her. An essential feature of that character of basis for the imputation of contributory negligence is knowledge of the party charged that of the two courses open to choice one is safe and the other dangerous. The last four grounds of the demurrer pointed, in different forms, this objection to the plea; and on that account, if no other, the plea was properly stricken on demurrer. The presentation to the city of the claim declared on was entirely sufficient.—*Perrine v. Sou. Bitulithic Co.,* 190 Ala. 96, 66 South. 705.

(9) There is no possible merit in the assignment predicated of the court's action in overruling the motion for a new trial, one ground of which was newly discovered evidence or source of evidence with respect to the injury suffered by plaintiff. If the defendant had been properly diligent, after knowledge that Dr. Burns had taken an X-ray view of the plaintiff's injury, the testimony of this gentleman could have been made readily available to the defendant on the trial.

(10) In response to the "objection" of defendant's counsel to a part of the argument of one of plaintiff's counsel to the jury, the court told the jury that the trial should be had on the legal evidence, under the law of the case. The sufficiency of this expression of the court for the purpose of eradicating or of eliminating improper argument (if so) was not questioned by the objection. The court did, at least in degree, what the objection asked it to do. Certainly, if the objector had been as explicit, as he should have been under the rule of the *Gonzales Case,* 183 Ala. 273, 61 South. 80, 84, the court would have heeded the objector's suggestion and would have more affirmatively and particularly excluded the argument complained of, if in fact it was improper. This assignment is also without merit.

There being in the case no plea tendering an issue of contributory negligence of the character of that hypothesized in refused charge 5, that request was refused without error. There is no prejudicial error assigned and urged here. The judgment is therefore affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and DE GRAFFENRIED, JJ., concur.