(126 So. 169)

## CITY OF ANNISTON v. HILLMAN.
### (7 Div. 861.)

Supreme Court of Alabama. Jan. 25, 1930.

506

Rutherford Lapsley and Leslie C. Longshore, both of Anniston, for appellee.

James F. Matthews and Merrill, Field & Allen, all of Anniston, for appellant.

BOULDIN, J. The appeal is from a judgment for the payment of money rendered in an action of tort against a municipal corporation.

A supersedeas bond was executed by the mayor on behalf of the municipality, but without surety. No other security for costs of appeal was given.

Appellee moves to dismiss the appeal for want of a proper supersedeas bond or other security for costs. Code, § 1900, dealing with the duties and powers of the mayor, says: "He shall execute all deeds and contracts, and bonds required in judicial proceedings for and on behalf of the city or town, and no sureties shall be required on such bond." A supersedeas bond on appeal is assuredly a bond in judicial proceedings. Appellee's view is that this section has no relation to bonds on appeal, and, in support of that

view, refers to certain sections dealing with appeals by municipalities.

In a case involving the validity of a city ordinance, the city may appeal from an adverse judgment of the recorder to the circuit court "without bond." Code, § 1937. But, on appeal in such case from the adverse ruling of the circuit court, the city must give security for costs of appeal. Code, § 1943.

In city tax cases appeals may be taken from the decree of the circuit court, "provided that no sureties on any bond shall be required of a city or town." Code, § 2147. In local assessment cases, the city may appeal from the decree of the circuit court, "without giving bond." Code, § 2214.

These statutes do not cover the entire field of appeals by municipalities. They provide for special cases. In the main, they are cumulative provisions, reasserting the general policy declared in section 1900.

Behind this statute may be discerned the policy of relieving a municipality seeking a review by appeal from incurring an obligation to protect a surety at all events to the displacement of priorities in payment of claims against the city. Some judgments for money are payable only from surplus revenues, after making fair and reasonable provision for carrying on the usual government activities committed to cities. White v. Mayor & Council of Decatur, 119 Ala: 476, 23 So. 999.

We are of opinion section 1900 governs the case; that the mayor was authorized to execute a supersedeas bond without surety. No other security for costs was required. Motion to dismiss the appeal is denied.

Appellant also raises a preliminary question:

■ Under the complaint and evidence in support thereof, the city was liable, if at all, under the doctrine of respondeat superior, for the wrongful act of its foreman or superintendent in committing an assault upon plaintiff's intestate, resulting in his death, and while acting within the line and scope of his employment in working the decedent as one of the street construction force of the city. Defendant moved the court to require plaintiff to amend by bringing in this foreman as party defendant, or, failing so to do, suffer a nonsuit under Code, § 2030. Denial of this motion is assigned for error and presented in argument.

This court has construed section 2029 (1273) and section 2030 (1274) as limiting the joinder of other persons liable for the same tort to outside parties creating a dangerous condition in the street, the city's liability arising from negligent failure to remove such defect or obstruction. It is held the joinder statute does not apply to cases of liability of the city for the wrongful acts of its agents, under the doctrine of respon-

deat superior. City of Birmingham v. Carle, 191 Ala. 539, 68 So. 22, L. R. A. 1915F, 797; City of Montgomery v. Ferguson, 207 Ala. 430, 93 So. 4; Editor's note to section 2029, Michie's Code of 1928.

These statutes have been recodified without change, since they were construed in the above-cited cases. Whatever doubts we might have as to the scope and intention of these statutes in the matter of joinder of parties, if their construction were of first impression, the former holdings will not now be disturbed.

The question of moment is whether the city is liable in a case of this sort.

The decedent was convicted of violating a city ordinance, and sentenced to hard labor. He was then put to work in a slag pit, digging and loading on trucks slag which was being used on the city streets. According to the complaint and evidence in support thereof, the officer in charge of the prisoner was also the foreman or superintendent in charge of this part of the street construction work, and, while acting within the scope of such employment, struck the prisoner with a pick handle, causing his death.

This is the third appeal in the case. The question was fully considered on first appeal. Hillman v. City of Anniston, 214 Ala. 522, 108 So. 539, 46 A. L. R. 89. The city was held liable. The matter was again considered, and the original decision reaffirmed on second appeal. Hillman v. City of Anniston, 216 Ala. 661, 114 So. 55.

■ Mindful of our statute, it is again considered by the full court anew, and our decision is "governed by what, in the opinion of the court at this time, is the law." Code, § 10287; L. & N. R. Co. v. Western Union Tel. Co., 195 Ala. 124, 71 So. 118, Ann. Cas. 1917B, 696.

■ Appellant takes the position that in no event does the Homicide Act apply to municipal corporations. The contention seems to be rested on the ground that the damages under such act are punitive and not compensatory. This court has ruled otherwise in another recent case. City of Birmingham v. Whitworth, 218 Ala. 603, 119 So. 841.

The statute applies to "any * * * corporation;" and confers the right of action "if the testator or intestate could have maintained an action for such wrongful act, omission, or negligence, if it had not caused death." Code, § 5696.

While the statute is preventive, aims to protect life, the manner of accomplishing such purpose is to impose damages, punitive rather than compensatory, in such cases as the injured would have been entitled to recover compensatory damages if death had not ensued. We see no room for construction of such statute so as to strike out municipal

508

corporations, to relieve them where death results, in such cases as the party would be entitled to sue for injury merely.

The question of greater difficulty is whether the law of immunity in favor of municipal corporations engaged in functions of government, such as the execution of its penal ordinances, or the law of liability for the acts of its officers or agents while engaged in a corporate enterprise, should be applied.

The rule declared in this case on former appeals has been incorporated in the text of Corpus Juris in these words (43 C. J. 967):

"Where a prisoner sentenced to work on the street or upon any enterprise corporate in character is injured by the wrongful act of the municipal agent superintending such work, the municipality is liable, although such agent was also a police officer having custody of the prisoner."

The general law on the subject is thus stated in the same text (43 C. J. 938):

"If such officer or employee is a part of the machinery for carrying on the municipal government and is at the time of the tortious act engaged in the discharge of a duty primarily resting upon the municipality in its corporate capacity and for its special benefit or advantage, he is regarded as the agent of the municipality, and the doctrine of respondeat superior will apply."

■ It cannot be questioned that, under the rule long established in this state, the city in the construction and maintenance of its streets, is engaged in a corporate enterprise; that whatever other relation subsists between the city and its officers, when engaged in such corporate enterprise, they act ministerially as corporate agents, and for their torts committed in the line and scope of employment the city is liable under the doctrine of respondeat superior; that the rule is the same as where the city is constructing or operating proprietary enterprises, such as public utilities. See cases cited and reviewed in Hillman v. City of Anniston, 214 Ala. 522, 108 So. 539, 46 A. L. R. 89.

In the case of Warren v. Town of Booneville, 151 Miss. 457, 118 So. 290, the Supreme Court of Mississippi has approved and followed the views expressed in the dissenting opinions on former appeals of this case. The Mississippi case involved the manner of confinement, in shackles, while working the prisoner on the streets. Whether this differentiates the case we need not decide.

The Mississippi court cites and quotes from Nisbet v. Atlanta, 97 Ga. 650, 25 S. E. 173, noted in our former decision.

In studying the views of the Georgia court as to whether street work is governmental or corporate, we note in the case of Cornelisen v. City of Atlanta, 146 Ga. 416, 91 S. E. 415, 416, the court cites instances of governmental activities, and declares no liability attaches in such cases "as a general rule." Then proceeds:

"An exception to the general rule exists in the case of streets and sidewalks, which in the recent case of Ackeret v. City of Minneapolis, 129 Minn. 190, 151 N. W. 976, L. R. A. 1915D, 1111, Ann. Cas. 1916E, 897, was referred to as, 'an illogical exception' to the general rule; but the exception is recognized in that state, as in this state."

This seems to imply that, although maintenance of streets is a governmental work, an illogical exception is made in imposing liability for failure of duty therein. This concept is widely different from that of the Alabama court, as appears from our decisions for three-quarters of a century.

In a still later case, however, Mayor and Aldermen of City of Savannah v. Jones, 149 Ga. 139, 99 S. E. 294, it was declared that the maintenance of a receptacle for trash and waste on the sidewalk, and disposal of its contents, was a government function in the interest of the public health. Nevertheless, the leaving of the receptacle open so that the cover projected over the sidewalk and injured a person passing thereon was held a violation of the ministerial duty to keep the streets free from obstructions, and the city was held liable. Here was recognized a dual duty in the sanitary officer or agent and liability referred to that failure of duty causing the injury.

The Mississippi court further says the leading case is that of Curran v. Boston, 151 Mass. 505, 24 N. E. 781, 8 L. R. A. 243, 21 Am. St. Rep. 465.

In the first place, in Massachusetts no liability even for defects in streets is recognized, except by statute. This is known as the New England rule, at variance with that prevailing generally throughout the country. French v. Boston, 129 Mass. 592, 37 Am. Rep. 393; Hill v. Boston, 122 Mass. 344, 23 Am. Rep. 332; 2 Elliott on Roads and Streets (4th Ed.) § 788.2.

In Curran v. City of Boston, supra, a city convict was sentenced to the workhouse, or house of industry, and was injured while hauling coal for the maintenance of the workhouse. Said the Massachusetts court:

"It is a general principle that municipal corporations are not liable to private actions for omissions or neglect in the performance of a corporate duty imposed upon them by law, or that of their servants engaged therein, where such city derives no benefit therefrom in its corporate capacity, unless such action is given by statute."

After discussing the nature and purpose of the workhouse, the opinion proceeds (151 Mass. 505, 24 N. E. 782, 8 L. R. A. 243, 21 Am. St. Rep. 467):

"No such case is presented as exists where a city has undertaken to build particular works, as water-works, sewers, etc., and where a city acts as an agency to carry on an enterprise to some extent commercial in its character, for the purpose of furnishing conveniences and benefits to such as choose to pay for them. The element of consideration then comes in, and in such cases it is usually held that a liability exists on the part of the city for an injury to an individual through negligence in building or maintaining such works."

"Corporate duty," as used in that decision is more in the nature of "governmental duty," as employed in our decisions and in the decisions generally. Waterworks and other public utilities are usually termed corporate or proprietary enterprises.

The matter of importance here is that an express distinction is made in the Curran Case between torts arising in that sort of enterprise and the alleged tort then under consideration. Nowhere in the case is nonliability predicated on the mere fact that the injured was a prisoner serving a sentence. The nature of the work to which he was put is made the test. Impliedly, if the prisoner had been put to work constructing or operating a waterworks plant, an electric light or gas plant, the city would have been held liable.

Now, reverting to the law prevailing here and elsewhere, that in the construction and maintenance of streets the city is liable for injuries to person or property from the misfeasance or malfeasance of its officer or agent in precisely the same way as in the construction or operation of public utilities or sewers, the logic of the Curran Case supports our former decisions in this case.

Emphasis is laid in many cases upon profit or income derived from corporate enterprises, which cities are authorized to conduct.

In the ordinary sense they yield no private profit. The utility itself serves a public purpose in the promotion of the health, safety, convenience, or comfort of its inhabitants, the public which the municipality is primarily created to serve; and the income derived is a public fund to be used pursuant to law to the same end. Probably no substantial distinction can be drawn between the benefits accruing from good and safe streets and these other enterprises, especially public sewer. At any rate, our law makes no such distinction.

In dealing with the difficult question of municipal liability for injury to person and property, the courts, from an impelling sense of justice, have sought to define a line beyond which the doctrine of immunity shall not be extended. Certain enterprises so far partake of the nature of business or industrial undertakings, the hazards from failure of duty enjoined by law in that regard, and

from the wrongful act of the agents engaged therein, are such that the broad doctrine, viz. they who share the benefits should bear the burdens, is given effect.

Much difference of opinion has naturally resulted both in stating the ground on which liability or nonliability is to be based, and in the application of declared rules to the multiform conditions of fact presented.

As pointed out in our former decisions, we have a case in which such corporate enterprise was being conducted that all persons, employees, or strangers were within the protection of the law as against the wrongful acts of the agents in charge. Should this protection be denied a prisoner? The argument against liability rests on the assumption that working the prisoner in street construction was a mere incident to executing the sentence.

Where the man was put to work in a corporate capacity, the agent at the time working him in that capacity, and the wrongful act arose in course of and by reason of so employing the prisoner, we think it a misapplication of terms to call the employment a mere incident. We may as well say his being a convict was the occasion of his being lawfully put to work on a corporate enterprise.

Facing the imperative question whether this relation shall deprive him the protection, accorded to all other persons, under a law to conserve the elemental right to live, we must answer "No."

We find no error to reverse the other rulings insisted upon. They have been fully considered, but this opinion will not be further extended by a detailed discussion.

Affirmed.

SAYRE, THOMAS, and BROWN, JJ., concur.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., dissent.

GARDNER, J. (dissenting). The officer in charge of the deceased prisoner was the city's convict guard, a position he had held many years. The prisoner was sentenced to hard labor upon the city streets. This character of labor of a convict is expressly authorized by section 1936, Code 1923, wherein the recorder is authorized to sentence the prisoner "to hard labor upon the streets or public works, or in the workhouse or house of correction of the city." So, whether the convict is to serve hard labor on the streets, or on some public works, or his sentence is to the workhouse of the city, he is in all cases serving the sentence imposed by law, and in the execution of such sentence the city is in the exercise of a governmental function.

The authorities are all in accord that in the exercise of such governmental power the city is immune from suits of this character. See authorities cited in the note to Hillman

510

v. Anniston, 46 A. L. R. p. 89, et seq. This immunity is time-honored. It is swept away in the instant case merely because the convict was put to work on the streets, rather than in the workhouse, though hard labor upon the streets is designated in the statute along with workhouse. The effect of the decision is to rest the principle of immunity upon the mere act of the recorder in selecting the place of work. If on the streets, liability may be imposed, if in the workhouse, the city is immune therefrom.

We find no authorities to sustain this view, and none are noted in the majority opinion. The only case where the question has been raised following the first pronouncement in this cause is that of the Mississippi Supreme Court of Warren v. Town of Booneville, 151 Miss. 457, 118 So. 290, 293, where the majority view was repudiated and attention directed to the fact that in the quoted text of Corpus Juris the authority of this case is the only authority noted. The Mississippi court well expressed our views in the concluding paragraph of their opinion as follows:

"We are of opinion that the working of the streets is a mere incident to the carrying out of the imposition of a sentence for crime on one who has violated the law or ordinance of the municipality, and that, if a prisoner is injured because of the manner of his being held, there would be no difference whether he were at work on the street, or at work in a municipal prison, making shoes or manufacturing cloth, or in the municipal blacksmith shop, engaged in hammering or welding, which latter are clearly and undeniably the exercise of governmental functions as to the prisoner so engaged. There can be no real distinction."

But further discussion would serve no useful purpose. We had considered the principle of law here involved well and firmly settled in the jurisprudence of this country, and, being persuaded its overthrow is unjustified by the authorities or sound reasoning, we have felt impelled to record this further dissent. So wide a departure from so well settled a principle should be left to the legislative department of the government.

ANDERSON, C. J., and FOSTER, J., concur in the foregoing views.