67 So.2d 800

**MORRIS v. CRUMPTON.**

**6 Div. 428.**

Supreme Court of Alabama.

Oct. 29, 1953.

Jackson, Rives, Pettus & Peterson, Birmingham, for appellant.

Clifford Emond, Birmingham, for appellee.

SIMPSON, Justice.

This is an action for personal injuries and property damage sustained by appellee in a collision of his motorcycle with the automobile of appellant.

The accident occurred in Birmingham at the intersection of 24th Street and Second Avenue, South, at about 2 p. m. on July 24, 1951. The 24th Street viaduct begins at the north line of Second Avenue. The width of both streets is 50 feet except that the travelled portion for vehicles of the viaduct is 40 feet, there being a small driveway on each side outside of the railing. The usual traffic signal light was suspended at the center of the intersection to regulate the movement of traffic. The point of collision was about 21 feet north of the south curb line of Second Avenue and about even with the projected east curb line of 24th Street on the south. Thus was the locus in quo.

The first assignments of error are predicated on the denial of the motion for a new trial on the weight of the evidence and the refusal of certain special charges requested for the defendant. So we will first set out the tendencies of the evidence to sustain the plaintiff's case. Defendant was proceeding south on 24th Street and had stopped at the north side of Second Avenue for the red light. Plaintiff's son, driving his father's automobile, was going north

on 24th Street in the traffic lane toward the center and had stopped behind the first car on the south side of Second Avenue for the red light. Plaintiff on his motorcycle had pulled up even with his son on the right lane next to the east curb of 24th Street. When the light changed to green, the north and south traffic on 24th Street began to move. The car ahead of plaintiff and the car ahead of plaintiff's son moved on north across Second Avenue and the plaintiff and his son proceeded to follow, the plaintiff a little ahead of his son. About the time the north and south traffic began to move, the defendant, heading south, moved toward the intersection and then turned left and started east on Second Avenue. When the son in the car toward the center of 24th Street observed this, he immediately stopped his car in order to avoid a collision with defendant's car. The son saw the mechanical signal for a left turn being made by defendant's car, but the plaintiff, who was on the east side, saw no such signal, indeed no signal at all. Plaintiff at this point was proceeding northwardly—as he had a right to do, his way apparently clear for safe movement—at a slow rate of speed (about five to seven miles per hour) and on seeing the defendant's car making toward him blew his horn and turned to the right (eastwardly) in order to avoid the collision, but was unable to and the left rear side of the motorcycle collided with the right front bumper guard of defendant's automobile. There was credible evidence that on turning left into this north-bound traffic, rather than looking south to see if he could move across it in safety, the defendant was looking at the traffic light or in another direction and didn't see the plaintiff until he hit him and so stated at the time of the accident. Defendant was seventy-four and plaintiff was thirty-eight years of age.

Section 17, Title 36, Code 1940, as amended by General Acts 1949, p. 759, as pertinent provides:

"(b) No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway * * * or * . * * turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety. No person shall so turn any vehicle without giving an appropriate signal in the manner hereinafter provided in the event any other traffic may be affected by such movement.

"(c) A signal of intention to turn right or left when required shall be given continuously during not less than the last one hundred (100) feet traveled by the vehicle before turning."

The tendency of the evidence for the plaintiff showed a violation of this provision of our traffic law by the defendant in that he obviously did not delay turning from a direct southerly course to the left (easterly) until such movement could be made with reasonable safety. His conduct imported just the contrary and was so at variance with what should be the customary conduct of a reasonably prudent driver that to have granted the motion for a new trial on the weight of the evidence, predicated on the defendant's freedom from negligence or on the plaintiff's contributory negligence, would have been without warrant.

It is argued for appellant that § 1253(c) and § 1291(b) of the City Code of Birmingham should operate to produce the contrary result. The sections read:

"Section 1253(c). The driver of a vehicle approaching but not having entered an intersection shall yield the right of way to a vehicle within such intersection and turning therein to the left across the line of travel of such first mentioned vehicle, provided the driver of the vehicle turning left has given a plainly visible signal of intention to turn as required in Section 1291."

"Section 1291(b). The signal herein required shall be given either by means of the hand and in the manner herein specified or by an approved mechanical or electrical signal device, except that when a vehicle is so constructed or loaded as to prevent the hand and arm signal from being visible both to the front and rear, the signal shall be given by device of a type approved by the state highway department. . Whenever

the signal is given by means of the hand and arm, the driver shall indicate his intention to stop or turn by extending the hand and arm horizontally from beyond the left side of the vehicle. Before backing, warning shall be given by sounding or ringing bell or by other mechanical signals."

The first answer to this contention is that the evidence was in sharp dispute as to whether the vehicle of defendant entered the intersection first or whether plaintiff entered first, thereby making it a jury question as to who should have "yielded" or who was at fault in bringing on the collision.

The next answer is that the Birmingham ordinance must be read and construed in the light of the governing statute of the State first hereinabove quoted. Therefore, under the evidence, it was immaterial which vehicle entered the intersection first, since it was still incumbent upon the driver turning left into the regular course of traffic to make sure that this change of direction could be made with reasonable safety. To construe the ordinance otherwise and by its strict terms without regard to the requirement of the State statute would make it incompatible with State law and therefore inoperative. Code 1940, Title 37, § 455; Constitution, § 89; Turner v. Town of Lineville, 2 Ala.App. 454, 56 So. 603, 605, by Walker, P. J.; Lisenba v. Griffin, 242 Ala. 679, 8 So.2d 175.

From these considerations it also results that defendant's charges 9 and 13 were properly refused. Pretermitting further the question of whether under all conditions, in view of the State statute, the plaintiff would be required to yield to the defendant if the latter's vehicle had entered the intersection first, the charges were faulty in omitting the requirement of the State law that the signal or intention to turn must have been given "continuously" and the plaintiff in the exercise of due care must have been in a position to see, otherwise the movement of the defendant would not have been made with reasonable safety. Thus were the charges incomplete and misleading.

It is next argued that error prevailed in the refusal of defendant's charge 40 to the effect that the plaintiff was not entitled to an award of damages for injury to the motorcycle on the theory that the motorcycle was not the property of plaintiff, but was owned by his minor son. While this was a matter in sufficient dispute to require the decision of the question by the jury and thereby justify refusal of the charge, the instruction was hypothesized on a misconception of the pertinent rule. Possession in the plaintiff of a bailed chattel, as against a wrongdoer without title who injures it, will sustain an action against the latter. Arledge v. J. D. Pittman Tractor Co., 236 Ala. 131, 181 So. 91; Bradley v. Wood, 207 Ala. 602, 93 So. 534.

Nor is there merit in the contention that there was "no evidence of market value" of the motorcycle. There was proof to show that the chattel was new and its cost price and that after the accident its damage was about $125. This was some proof of value and authorized submission of the question to the jury. Lindsey v. Kindt, 221 Ala. 190(10), 128 So. 139; Newton v. Altman, 227 Ala. 465, 150 So. 698.

The argument is advanced that the court also erred in refusing charges 27 and 28, which in effect sought to charge out any recovery for injury to the plaintiff's back (no. 27) and arms (no. 28). We cannot pronounce error to reverse in their refusal. There was evidence that his left arm was injured and it would be a fair inference that he received some hurt to his back when he was catapulted from his motorcycle and landed on his head on the pavement, meanwhile leaving his thumb engaged with the handle bar. Moreover, the court sufficiently charged on this matter, thereby rendering the refusal of the charges harmless anyway, when he instructed the jury as follows:

"Gentlemen, I might say that, of course, as to injuries or personal injury, you would be authorized to award damages only for injuries as you heard the testimony here, that is, as to the parts of the body or whatever particular injuries you are satisfied from the evi-

dence the plaintiff suffered. I think you understand that."

It is also argued that the verdict of $2,000 was excessive. Considering the high cost of living and the diminished purchasing power of the dollar, we are unwilling to put the court in error for refusing to disturb the verdict on this ground. Plaintiff's head and right knee hit the pavement and he naturally had contusions and abrasions on these parts and suffered severe pain. His upper right jaw was fractured, the fracture extending into the antrum, and there was a depression in another part of the upper jaw in the orbit or edge of the eye. The knee was badly injured. His face was scratched and his knee swollen and he had pains in his head and face—still has them. Considering the type of work the plaintiff must do to make his livelihood and not being able to stay off of his knee, the evidence furnished a fair inference that this injury might be lasting. The plaintiff suffered severe headaches and nosebleeds even up to the time of the trial some seven months after the accident and this condition indicated to the doctor that he probably had a concussion. All in all, we cannot say that the verdict was so against the weight of the evidence as to clearly show that it was the result of inadvertence or an intentional or capricious disregard of the evidence, or was infected with bias, passion or other improper motive and that the excessiveness of the verdict was the result thereof. Of consequence we cannot rule it excessive. Birmingham Electric Co. v. Howard, 250 Ala. 421, 424, 34 So.2d 830.

The final argument for error relates to the closing argument of counsel for the plaintiff where he made reference to an article he read in a "newspaper a few weeks ago about a man who lost a foot at Miami and the jury returned a verdict for him of $350,000." While we do not condone such conduct of counsel, it so happens here that no error to reverse is shown. The court promptly sustained the defendant's objection to the argument and no further ruling was invoked by the defendant, but he sought to rest a right of reversal on the refusal of the court to grant the motion for new trial on that ground. It is enough

to say that the court did all it was asked to do and will not be placed in error for failing to do more. As stated in Alabama Great Southern R. Co. v. McFarlin, 174 Ala. 637, 647, 56 So. 989, 991:

"On the subject of a new trial, all that is shown in regard to the remark made by the counsel for the plaintiff in his argument is that the defendant objected to the remark, and the court sustained the objection. No motion was made to exclude the remark, nor was any objection offered to the further remarks of counsel. The only ruling being in favor of the defendant, and no exception being reserved, it is difficult to see the basis for an assignment of error either on the application for a rehearing or on this appeal."

See also City of Birmingham v. Carle, 191 Ala. 539, 68 So. 22, L.R.A.1915F, 797; McCormack Bros. Motor Car Co. v. Martin, 21 Ala.App. 50, 105 So. 697; Washington v. State, ante, p. ——, 65 So.2d 704.

Our conclusion is that appellant has failed to show prejudicial error.

Affirmed.

LIVINGSTON, C. J., and GOODWYN and CLAYTON, JJ., concur.