What duty does a city owe to persons using its streets to maintain a traffic control sign at an intersection once a sign has been placed there by the city? That is the central issue on this appeal.
The facts necessary to decide the issue are not substantially controverted. On July 7, 1976, the plaintiff/appellee Thomas Lonnie Kelley, Jr., received serious injuries when a motorcycle he was riding collided with an automobile driven by one Ellarene Robinson at the intersection of Broadway Street and Main Boulevard in Prichard, Alabama. Plaintiff sued Mrs. Robinson and also sued the City of Prichard, claiming that the City was negligent in failing to maintain a stop sign or traffic signal at the intersection in question. The evidence clearly revealed that at one point in time there had been a stop sign at the intersection *Page 404 
on Broadway Street. Unquestionably, there was no stop sign in place on the day of the accident.
The City of Prichard contends that it did not have any duty to the plaintiff to erect a stop sign at the intersection of Broadway Street and Main Boulevard, and argues that even if it had at some time erected a stop sign at the intersection, it was under no legal duty to maintain the sign indefinitely. The City contends that its responsibilities in erecting and maintaining traffic signs are entirely discretionary. In short, the City asks this question: Did the failure of the City to maintain the stop sign on Broadway at Main constitute a "failure to remedy some defect in the streets, alleys, public ways or buildings after the same had been called to the attention of the council . . or after the same had existed for such unreasonable length of time as to raise a presumption of knowledge of such defect on the part of the council"? Code 1975, § 11-47-190.
In responding to the question posed by the City, we recognize that Code 1975, § 11-47-190, imposes upon corporate municipalities certain affirmative duties with regard to the maintenance of streets, alleys and public ways. The express language of that statute speaks in terms of a basic responsibility to act with reasonable diligence and due care in alleviating potential defects in public ways; however, the pragmatic application of that language has led to the expression of a much more generalized legal duty.
Prior to the enactment of § 11-47-190, the subject of responsibility for street maintenance was a matter governed almost exclusively by judicial decision. The courts of this state were led in their decisions on the subject by the compelling language of the United States Supreme Court inChicago City v. Robbins, 2 Black 418, 17 L.Ed. 298 (1862). InRobbins, the court stated:
 "It is well settled that a municipal corporation having the exclusive care and control of the streets, is obliged to see that they are kept safe for the passage of persons and property, and to abate all nuisances that might prove dangerous; and if this plain duty is neglected, and any one is injured, it is liable for the damages sustained. The corporation has, however, a remedy over against the party that is in fault, and has so used the streets as to produce the injury, unless it was also a wrong doer."
On the basis of this holding, this Court came to hold that municipalities, by virtue of their exclusive authority to maintain streets, are laden with the responsibility of keeping their streets in repair and in a condition reasonably safe for their intended use. Albrittin v. Mayor Aldermen ofHuntsville, 60 Ala. 486 (1877); City Council of Montgomery v.Wright, 72 Ala. 411 (1882); Town of Cullman v. McMinn, 109 Ala. 614,19 So. 981 (1895). It was the affirmative duty expressed in these cases which later formulated the basis and substance of § 11-47-190. Once incorporated into the statute, the responsibility, once attributed solely to the municipalities' governmental authority, rose to the level of a legal duty. In addressing the provisions of Ala. Code, Tit. 37, § 502 (1940), the precursor to Code 1975, § 11-47-190, this Court stated:
 "* * * Prior to that enactment the upkeep of the streets was a governmental function and not a legal duty, except as otherwise provided by some special law. Albrittin v. Mayor Aldermen of City of Huntsville, 60 Ala. 486. Thereafter it has been a legal duty, imposing responsibility upon the city for negligence in performing it. The power and authority to control streets was made the exclusive prerogative of the city, which created a corresponding and coextensive duty and therefore a civil liability for the consequences of a default therein. City of Bessemer v. Whaley, 187 Ala. 525, 65 So. 542; City of Birmingham v. Carle, 191 Ala. 539, 68 So. 22, L.R.A. 1915F, 797; City of Bessemer v. Barnett, 212 Ala. 202, 102 So. 23; City of Birmingham v. Whitworth, 218 Ala. 603, 119 So. 841."
Oliver v. Water Works Sanitary Sewer Board, 261 Ala. 234,236-237, 73 So.2d 552, *Page 405 
553-554 (1954). It is now fully recognized that the duty imposed upon cities to keep their public ways free of defects is but the expression of a broader responsibility to exercise ordinary and reasonable care in keeping streets in a reasonably safe condition for travel. McCarroll v. City of Bessemer,289 Ala. 449, 268 So.2d 731 (1972); City of Florence v. Stack,275 Ala. 367, 155 So.2d 324 (1963); Johnson v. City of Opelika,260 Ala. 551, 71 So.2d 793 (1954). The question then becomes one of whether the maintenance of traffic control signs is a part of the City's responsibility to keep its streets safe for use by the public.
The City cites Dorminey v. City of Montgomery, 232 Ala. 47,166 So. 689 (1936), in support of the proposition that a city's duty to keep its streets in a reasonably safe condition does not include any duty to maintain traffic control signs. InDorminey, the court specifically confronted the issue of whether the City of Montgomery could be held liable for injuries resulting from an intersectional automobile collision allegedly caused by the defective operation of a traffic light. At 232 Ala. 49, 166 So. 690-691, the court stated:
 "We have consistently held that a municipality is under the legal duty to keep its streets and sidewalks in a reasonably safe condition for the use of the public, and for the negligent failure to perform this duty it is liable in tort to a person thereby injured. This duty to keep its streets and sidewalks in a reasonably safe condition we have held to be a corporate, rather than a public, duty; that its officers or agents, while engaged in the performance of this duty, were engaged in a ministerial, rather than a governmental, function. City of Bessemer v. Barnett, 212 Ala. 202, 102 So. 23; City of Bessemer v. Whaley, 187 Ala. 525, 65 So. 542; City of Birmingham v. Muller, 197 Ala. 554, 73 So. 30; Densmore v. City of Birmingham, 223 Ala. 210, 135 So. 320; City of Anniston v. Hillman, 220 Ala. 505, 126 So. 169; City of Selma v. Perkins, 68 Ala. 145, 148.
 "We have also held that persons on streets of a municipality may assume that the ways are free from unlawful obstructions or dangerous defects, so long as ordinary care on their part does not disclose such defects. City of Birmingham v. Carle, 191 Ala. 539, 68 So. 22, L.R.A. 1915F, 797.
 "However, we are of the opinion that the obstructions or defects relate to physical obstructions or defects."
Since a defective traffic light could not realistically be categorized as a physical obstruction or defect in the street, the City could not be held liable for any negligence in failing to keep its streets in a reasonably safe condition. In the same way, a missing stop sign does not constitute any physical defect in the street; therefore, under the principles espoused in Dorminey, we must conclude that the City of Prichard has not been negligent in maintaining its streets. It, therefore, has not breached its responsibilities under Code 1975, § 11-47-190.
In reaching this holding, we fully recognize that courts in companion jurisdictions have reached different conclusions on the same point of law. See generally Annot. 34 A.L.R.3d 1008. Some jurisdictions have reasoned that traffic control devices, such as stop signs, are very real physical appurtenances to public ways and their negligent maintenance may constitute a defect in the street. Grantham v. City of Topeka, 196 Kan. 393,411 P.2d 634 (1966). Numerous others hold that the responsibility of maintaining such devices is necessarily included within the municipality's duty to keep streets in a reasonably safe condition. O'Hare v. City of Detroit, 362 Mich. 19, 106 N.W.2d 538 (1960); Arizona State Highway Department v.Bechtold, 105 Ariz. 125, 460 P.2d 179 (1969); Smith v. City ofPreston, 97 Idaho 295, 543 P.2d 848 (1975). Thorpe v. City andCounty of Denver, 30 Colo. App. 284, 494 P.2d 129 (1972). Still others have held municipalities responsible for maintaining traffic control signs upon principles of nuisance. Fankhauserv. City of Mansfield, 19 Ohio St.2d 102, 249 N.E.2d 789 (1969);Town of Fort Ogelthorpe v. Phillips, 224 Ga. 834,164 S.E.2d 141 (1968). Our conclusion is based solely upon our reading *Page 406 
of the statute and how that statute has been interpreted by the courts of this state. On that limited ground, we must conclude that the City of Prichard is not liable for negligent maintenance of a street; however, that does not preclude liability on grounds falling outside the statute, liability which might be based entirely upon principles of ordinary negligence.
In determining whether the City might be liable outside the statute, we feel compelled to look again to the opinion of the court in Dorminey, supra. We find it significant that in that case the court categorized the city's action in erecting traffic control devices as an entirely governmental function, founded upon the city's authority to act for the public safety. At 232 Ala. 49, 166 So. 691, the court reasoned:
 "Traffic signal lights serve the purpose, and were so designed, to regulate the use of the streets, where installed. There is no duty enjoined by statute upon a municipality to install such signals, and, if installed, it is done in the exercise of a discretionary power, possessed by the municipality to conserve the safety of the public using such streets."
On the basis of this language, it is the opinion of this Court that in the immediate case, the City of Prichard was possessed of complete discretion so far as erecting a stop sign at the intersection of Broadway and Main was concerned. It chose to exercise that discretion and in doing so acted in a governmental capacity; but, having exercised discretion in erecting the sign, did it then have an obligation to maintain the sign in a reasonably safe condition? We believe so.
In Smith v. Godin, 61 Ill. App.3d 480, 18 Ill.Dec. 754, 755,378 N.E.2d 218, 219 (1978), the court dealt with a fact situation quite similar to that presently involved. That case involved an action against the City of East St. Louis based upon allegations that the city's negligence in failing to replace a missing stop sign at an intersection proximately caused an automobile accident. In responding to the defendant city's arguments, the court proceeded as follows:
 "Defendant argues that since no mention is made in the statute of a duty to maintain traffic regulatory devices once they are installed that none exists. Defendant is mistaken. The case law is plain that once having elected to erect devices to guide, direct or illuminate traffic, a city then has a duty to maintain those devices in a condition conducive to the safe flow of traffic."
Various other cases involving substantially similar facts reach this same conclusion. Wagshal v. District of Columbia,216 A.2d 172 (D.C. 1966); Johnston v. City of East Moline,338 Ill. App. 220, 87 N.E.2d 22
(1949). See also 39 Am.Jur.2d, Highways, Streets and Bridges, § 400 (1968). We find the rationale in these cases compelling, and especially because of the recent decision of this court in Dailey v. City ofBirmingham, 378 So.2d 728 (1979). In Dailey, the City of Birmingham was sued for the wrongful death of a minor child allegedly caused by the City's failure to complete its construction of a fence or barrier along the bank of a storm sewer ditch. The lower court entered summary judgment in favor of the City. On appeal, this Court determined that the entry of summary judgment was improper because there existed a genuine issue of material fact on the question of whether the City volunteered to protect the public by erecting the fence. The City was clearly not under any duty to construct a fence; however, if it volunteered to do so, it was bound to do the work and complete construction with all due care. At 378 So.2d 729, the Court stated:
 "Alabama clearly recognizes the doctrine that one who volunteers to act, though under no duty to do so, is thereafter charged with the duty of acting with due care and is liable for negligence in connection therewith. See, e.g., Robinson v. Harris, 370 So.2d 961 (Ala. 1979); United States Fidelity Guaranty Co. v. Jones, 356 So.2d 596 (Ala. 1978); Beasley v. MacDonald Engineering Co., 287 Ala. 189, 249 So.2d 844 (1971)."
Applying this principle of law to the present case, we hold that in erecting the *Page 407 
stop sign at Broadway and Main, the City of Prichard volunteered to act and was thereafter charged with the responsibility of acting with due care. We believe that maintenance of the sign was necessarily a part of that responsibility. We therefore, find that the City was under a duty to persons using its streets to maintain the traffic control sign erected by it in a reasonably safe condition.
After reviewing the evidence, it becomes abundantly clear that the City was negligent in carrying out the duty it voluntarily assumed. The City argues that it was never notified of the condition of the stop sign and cannot, therefore, be held liable for injuries resulting from its disrepair. We agree with the City that notice was required; however, we cannot agree that it was not received in this case. A review of similar cases reveals that notice of the disrepair of a traffic sign is a necessary prerequisite to liability. Wagshal v.District of Columbia, supra (stipulation of 6 days' notice of a missing stop sign); Smith v. Godin, supra (sufficient evidence to support an inference that the City had knowledge of a missing stop sign); Grantham v. City of Topeka, supra
(admission of the city that it had 20 hours' notice of a missing stop); Arizona State Highway Department v. Bechtold,supra (finding that city had 6 hours' actual notice of a defective traffic signal). We believe, however, that in the instant case there was more than sufficient evidence from which the jury could conclude that the City of Prichard had notice of the missing stop sign. The testimony of James D. McCrory, former building inspector for the City, reveals that an order had been made by him to replace the stop sign at the subject intersection some six months prior to the accident. The order was delayed, however, because the City would not pay for the sign. Additionally, the police chief of the City, Dan Davis, had been informed of the sign's disrepair as early as 1973. Beyond this, the very duration of the disrepair is, in and of itself, sufficient to raise at least an inference of notice. Several witnesses were called on the subject, each of whom testified that the sign had been down for long and varying periods of time. Some testimony indicates that the sign may have been down for as much as seven years. We believe that the cumulative effect of this evidence reveals that the City was notified that the stop sign was missing. The evidence is also clear that the City did not act properly in replacing it. This failure to act responsibly is actionable.
In holding that the City was negligent, we reiterate that this negligence was involved in the performance of a governmental function. At one time, as in Dorminey, the characterization of the function as governmental would, in and of itself, shield a municipality from liability in negligently performing it; however, with the advent of Jackson v. City ofFlorence, 294 Ala. 592, 320 So.2d 68 (1975), this is no longer true. By virtue of that case, the historical distinctions between governmental and proprietary functions are no longer important. Governmental immunity is no longer available to protect municipalities for the negligent performance of governmental acts. As a result, the City of Prichard can be held liable for negligently failing to maintain a stop sign. As can be observed in McQuillan, Municipal Corporations, 3d supp. § 43.42 (1979):
 "In those jurisdictions which have effectively abolished the historical distinction between proprietary and governmental functions as the determining factor in establishing liability in cases where persons claim injury at the hands of a local governmental entity, the rule is that once having elected to erect devices to guide, direct or illuminate traffic where no duty exists to do so, a municipality then has a duty to maintain those devices in a condition conducive to the safe flow of traffic and will be liable for its negligence in failing so to do."
Even though the City acted negligently, it still cannot be held liable absent a finding that such negligence was the proximate cause of the plaintiff's injuries. The jury concluded that the evidence supported such a finding and, therefore, rendered a verdict in favor of the plaintiff. The City *Page 408 
now attacks that verdict, arguing that there is insufficient evidence to support it. We disagree. The question of proximate causation in the present case was a matter properly submitted to the jury, Western Ry. of Alabama v. Still, 352 So.2d 1092
(Ala. 1977), and we will not overrule the jury's findings unless they are plainly erroneous or manifestly unjust.Winn-Dixie Montgomery, Inc. v. Henderson, 371 So.2d 899 (Ala. 1979). We hold that the findings made by the jury were not plainly erroneous. The judgment of the trial court which awarded plaintiff $75,000 pursuant to the jury verdict in his favor is, therefore, due to be affirmed.
Other issues raised by the parties need not be addressed for the purposes of this appeal.
AFFIRMED.
JONES, SHORES and BEATTY, JJ., concur.
TORBERT, C.J., concurs in the result.